ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

FEB 27 2012

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

| | |
|---|---|
| Thomas Rettig, Kerstin Rettig and Olivia Angelina Eckhardt, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| TUV Rheinland Rail Sciences, Inc.; TUV Rheinland North America Holding, Inc.; and TUV Rheinland of North America, Inc.; | ) ) ) ) ) |
| Defendants. | ) ) |

CAP

Civil Action No.
1:12-CV-0608

## NOTICE OF REMOVAL

Defendant TUV Rheinland of North America, Inc. ("TUV Rheinland"), by and through its undersigned counsel and pursuant to 28 U.S.C. §§ 1331, 1332, 1441 and 1446, hereby removes this action from the Superior Court of DeKalb County, State of Georgia, to the United States District Court for the Northern District of Georgia, Atlanta Division. In support of removal, TUV Rheinland respectfully shows the Court as follows:

### Background

1.      Plaintiffs Thomas Rettig, Kerstin Rettig, and Olivia Angelina Eckhardt (collectively "Plaintiffs") filed this action against TUV Rheinland, TUV Rheinland North America Holding, Inc. ("TUV Holding"), and TUV Rheinland

Rail Sciences, Inc. ("TUV Rail Sciences") (collectively "Defendants") in the Superior Court of DeKalb County, State of Georgia (the "Action") on February 15, 2012. The Action was designated Civil Action File No. 12CV2653-10. Copies of the Complaint and all other documents in the Action received by TUV Rheinland are attached *in globo* as Exhibit A.

2.     At the time of filing, Plaintiffs contemporaneously filed a "Motion for A Temporary Restraining Order And for Interlocutory Injunction" and a supporting brief. *See* Exhibit A. That same day, Plaintiffs obtained an "Order on Temporary Restraining Order And Rule Nisi" ("TRO"). *Id.* The TRO was entered without notice to TUV Rheinland or any other Defendant named in the Action.

3.     To date, Plaintiffs have failed to perfect service on TUV Rheinland or any other Defendant named in the Action.

4.     TUV Rheinland received notice of the Action on or about February 15, 2012, but has not yet been served. Accordingly, this Notice of Removal is timely filed. 28 U.S.C. § 1446(b).

5.     Although not required because they have not yet been joined and served, TUV Holding and TUV Rail Sciences consent to removal of this Action. Copies of their written consents are attached as Exhibit B.

**Venue**

6.     The Superior Court in which the Action was commenced is within this Court's District.   Therefore, the Action is properly removable to this Court.   28 U.S.C. § 1441(a).

**Removal Is Proper Based on Diversity Jurisdiction**

7.     This Action is within the original jurisdiction of this Court pursuant to 28 U.S.C. § 1332, as the matter in controversy is between citizens of a state and citizens or subjects of a foreign state and exceeds the sum or value of $75,000.00, exclusive of interest and costs.   *See* 28 U.S.C. § 1332(a)(2).

8.     Plaintiffs are citizens of Germany.   Plaintiffs admit they are not permanent resident aliens.   *See generally* Complaint.   Therefore, Plaintiffs are deemed citizens of Germany for purposes of removal.   *See* 28 U.S.C. § 1332(a)(2); *Mejia v. Barile*, 485 F. Supp. 2d 364, 367 (S.D.N.Y. 2007).

9.     TUV Rheinland is a Delaware corporation with its principal place of business at 12 Commerce Road, New Town, Connecticut 06470.

10.     TUV Holding is a Delaware corporation with its principal place of business at 1 Federal Street, Floor 18, Boston, Massachusetts 02110.

11.     TUV Rail Sciences is a Georgia corporation with its principal place of business at 411 N. Clarendon Avenue, Scottsdale, Georgia 30079.

3

12.     Because Plaintiffs are citizens of a foreign state, and each Defendant is a citizen of one of the various states of the United States, complete diversity exists in this action.  *See* 28 U.S.C. § 1332(a)(2).  Moreover, because TUV Rail Sciences has not been joined and served, its status as a forum defendant does not bar removal.

13.     In addition, the amount in controversy requirement is satisfied.  In their Complaint, Plaintiffs allege they are in jeopardy of "deportation, loss of income and the ability to earn income, the necessity for Olivia Eckhardt to withdraw from college, and <u>substantial</u> monetary damages."  (Complaint, ¶ 34 (emphasis added); *see also* ¶ 82.)  Plaintiffs further seek awards of compensatory and punitive damages and expenses of litigation.  (Complaint at ¶¶ 68, 76, 83-88 and at Wherefore Clause, ¶¶ 1-6.)  The potential value of Plaintiffs' claims establishes that the amount in controversy requirement is satisfied.

### Removal Is Proper Based on Federal Question Jurisdiction

14.     This action is also within the original jurisdiction of the United States District Court pursuant to 28 U.S.C. § 1331.  In the Complaint, Plaintiffs allege Defendants breached a duty to sponsor Plaintiffs "through the Green Card process" so Plaintiffs could obtain permanent residency in the United States.  Plaintiffs further demand that the Court "order specific performance of TUV's promise to

4

employ Mr. Rettig at [TUV Rail Sciences] for the duration of the Green Card process and to sponsor Mr. Rettig and his family through the duration of the Green Card application process[.]" (Complaint at Wherefore Clause, § 2; *see also* Complaint ¶¶ 54, 75.) The application process and steps for obtaining a Green Card are governed by the federal Immigration and Nationality Act ("INA"), and this is an area of law comprehensively regulated by the federal government. *See* 8 U.S.C. § 1101 *et seq.*; 8 C.F.R. § 100.1 *et seq.* Plaintiffs are requesting that the Court order Defendants to comply with federal immigration law by sponsoring Plaintiffs' permanent residency application in the Green Card process governed by federal law, taking all necessary steps in the Green Card process as required by federal immigration law, and seeking the Court's oversight in mandating Defendants' compliance with federal immigration law. Accordingly, jurisdiction exists pursuant to 28 U.S.C. § 1331 because Plaintiffs' Complaint involves substantial and important federal questions.

15. TUV Rheinland files this Notice without waiving any defenses to the claims asserted by Plaintiffs or conceding that Plaintiffs have stated claims upon which relief can be granted.

16. In accordance with 28 U.S.C. § 1446(d), TUV Rheinland will promptly give written notice hereof to Plaintiffs and will promptly file a copy of

this Notice of Removal with the Clerk of the Superior Court of DeKalb County, Georgia, informing the Clerk that this action is removed.  A copy of the Notice of Filing Notice of Removal is attached as Exhibit C.

WHEREFORE, TUV Rheinland prays that this Court take jurisdiction of this Action to its conclusion and to final judgment to the exclusion of any further proceedings in the Superior Court in accordance with law.

Respectfully submitted this 27th day of February, 2012.

Gregory L. Smith, Jr.
Georgia Bar No. 658369
Brandon M. Cordell
Georgia Bar No. 142030
JACKSON LEWIS LLP
1155 Peachtree Street, NE
Suite 1000
Atlanta, Georgia  30309
Telephone:  (404) 525-8200
Facsimile:  (404) 525-1173
smithg@jacksonlewis.com
cordellb@jacksonlewis.com

COUNSEL FOR TUV RHEINLAND OF NORTH AMERICA, INC.

6

## CERTIFICATE OF COMPLIANCE

Pursuant to LR 7.1(D), NDGa., I, Brandon M. Cordell, do hereby certify that this document has been prepared in Times New Roman font, 14 point, approved by this Court in LR 5.1(C), NDGa.

_____
Brandon M. Cordell

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| Thomas Rettig, Kerstin Rettig and Olivia Angelina Eckhardt, | ) ) ) | |
| Plaintiffs, | ) ) ) ) | |
| v. | ) ) | Civil Action No. _____ |
| TUV Rheinland Rail Sciences, Inc.; TUV Rheinland North America Holding, Inc.; and TUV Rheinland of North America, Inc.; | ) ) ) ) ) | |
| Defendants. | ) ) | |

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **NOTICE OF REMOVAL** via

hand delivery to:

> Fred Green, Esq.
> Judy Farrington Aust, Esq.
> Goodman McGuffey Lindsey & Johnson, LLP
> 3340 Peachtree Road NE
> Suite 2100
> Atlanta, Georgia 30326-1084

This 27th day of February, 2012.

_____
Brandon M. Cordell
Georgia Bar No. 142030

# EXHIBIT A

IN THE SUPERIOR COURT OF DEKALB COUNTY

STATE OF GEORGIA

THOMAS RETTIG, KERSTIN RETTIG
and OLIVIA ANGELINA ECKHARDT,

        Plaintiffs,

v.

TUV RHEINLAND RAIL SCIENCES,
INC., TUV RHEINLAND NORTH
AMERICA HOLDING, INC. and TUV
RHEINLAND OF NORTH AMERICA,
INC.,

        Defendants.

Civil Action
File No.: 12 CV 2653 - 10

FILED
2012 FEB 15  A 9: 08
CLERK OF SUPERIOR COURT
DEKALB COUNTY GA

---

### VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

COME NOW THOMAS RETTIG, KERSTIN RETTIG, and OLIVIA ANGELINA ECKHARDT by and through counsel, and make this Verified Complaint against Defendants TUV RHEINLAND RAIL SCIENCES, INC. ("TUV/RSI"), TUV RHEINLAND NORTH AMERICA HOLDING, INC. ("TUV Holding"), and TUV RHEINLAND OF NORTH AMERICA, INC. ("TUV Rheinland") (collectively "TUV"), showing the court as follows:

### Parties, Jurisdiction and Venue

1.

Thomas Rettig is a German citizen residing in Fulton County, and is employed by TUV/RSI in DeKalb County pursuant to his work status under an E-2 visa which was renewed in December 2010. Thomas Rettig is lawfully residing and working in Georgia.

2.

Kerstin Rettig is the lawful wife of Thomas Rettig. She is a German citizen residing in Fulton County with Mr. Rettig. Kerstin Rettig is lawfully residing and working in Georgia.

3.

Olivia Angelina Eckhardt is the biological daughter of Kerstin Rettig and the stepdaughter of Thomas Rettig. Ms. Eckhardt resides with Thomas and Kerstin Rettig in Fulton County and attends Georgia Perimeter College. Olivia Eckhardt is lawfully residing and attending school in Georgia.

4.

TUV Rheinland Rail Sciences, Inc. ("TUV/RSI") is a Georgia corporation with its principal place of business at 411 N. Clarendon Ave., Scottdale, DeKalb County, Georgia 30079. TUV/RSI's registered agent for service of process is Carl Saxon who can be served at 411 N. Clarendon Ave., Scottdale, Georgia.

5.

TUV Rheinland North America Holding, Inc. ("TUV Holding"), is a Delaware corporation, registered to do business in the State of Georgia, with its principal place of business at 1 Federal Street, Floor 18, Boston, Massachusetts 02110. TUV Holding's registered agent for service of process is Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, Georgia, 30092.

6.

TUV Rheinland of North America, Inc. ("TUV Rheinland") is a Delaware corporation, registered to do business in the State of Georgia, with its principal place of business at 1 Federal Street, Floor 18, Boston, Massachusetts 02110. TUV's registered

agent for service of process is Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092.

## Factual Background

7.

Plaintiffs are German nationals. They moved to the United States in 2006 and settled in Connecticut when Plaintiff Thomas Rettig accepted a job with Defendant TUV Rheinland. TUV Rheinland is a member of the German-based TUV Rheinland Group operating in the United States. Thomas Rettig obtained the necessary work visa. In July 2010, TUV acquired an American company Rail Sciences, Inc. and changed the name to TUV Rheinland Rail Sciences, Inc. In preparing for the acquisition, TUV Rheinland approached Thomas Rettig in early 2010 about its desire to transfer him to Scottdale, Georgia to assume the position of Vice President of Business Development at TUV/RSI.

8.

As a condition of Mr. Rettig's agreement to relocate to Georgia, he requested that TUV sponsor him in the acquisition of a Green Card for himself, his wife and his daughter, who is now age nineteen.

9.

On July 23, 2010, Mr. Rettig received a letter from TUV referencing his "Transfer of Employment from TUV Rheinland of North America, Inc. to TUV Rheinland Rail Sciences, Inc." A true and correct copy of this letter is attached as Exhibit "A".

10.

The July 23, 2010 letter advised Mr. Rettig that TUV/RSI was "in the process of creating [his] contract of employment," which was contingent on Mr. Rettig's "successful attainment of a non-immigrant work visa."

11.

The July 23, 2010 letter further advised Mr. Rettig that "[o]nce this non-immigrant visa is approved and attained TUV Rheinland Rail Sciences, Inc. will start the process of attaining a Green Card" for Mr. Rettig and his family.

12.

Mr. Rettig and his family moved to Georgia in or about July 2010, and Mr. Rettig began performing his duties as Vice President of Business Development at TUV/RSI. Mr. Rettig remained an employee of TUV until he could obtain his E-2 visa with TUV/RSI.

13.

Mr. Rettig received his non-immigrant work visa on December 7, 2010.

14.

Mr. Rettig made available to TUV all of the necessary information and documentation he was required to provide to process the application for a Green Card.

15.

On March 29, 2011, Mr. Rettig received a written Offer of Employment from TUV in which TUV confirmed its agreement to "sponsor Mr. Rettig and his family through the Green Card process." A true and correct copy of the Offer of Employment is attached to this Complaint as Exhibit "B."

16.

Mr. Rettig signed the Offer of Employment on April 23, 2011, thus acknowledging his acceptance of the Offer of Employment.

17.

TUV secured the services of attorney Hilde Holland, who practices with the New York law firm Wuersch & Gering, LLP, purportedly to attempt to secure Green Cards for

Mr. Rettig and his family. Attorney Holland was hired by TUV to represent both Thomas Rettig and TUV in the Green Card application process (also called a PERM application). As is the norm in immigration cases, Attorney Holland had a dual representation representing TUV/RSI as the employer/petitioner and Mr. Rettig as the foreign employee/beneficiary.

18.

On several occasions, Attorney Holland communicated directly with Mr. Rettig and advised him concerning his Green Card application and the status thereof. On February 4, 2011, Attorney Holland sent an email to both TUV and Thomas Rettig asking for documents she needed to complete the application for TUV "on behalf of Mr. Rettig." Mr. Rettig responded on April 2, 2011. True and correct copies of the February 4th and April 2nd e-mails are attached as Exhibits "C" and "D."

19.

On May 13, 2011, Attorney Holland, acting on behalf of TUV and Mr. Rettig, advised Mr. Rettig in an e-mail that she had analyzed his credentials and would file the prevailing wage request with the Department of Labor, the necessary first step of the Green Card application process, the following week. She further advised in the e-mail that she would "post the requisite ad postings" after receipt of prevailing wage information in approximately four to six weeks. A true and correct copy of the May 13, 2011 e-mail is attached as Exhibit "E."

20.

Despite his written requests, neither TUV nor Attorney Holland has provided Mr. Rettig with evidence that any part of a Green Card application process was undertaken on his behalf.

21.

Despite her assertions in her May 13, 2011 e-mail, Attorney Holland did not file the prevailing wage request with the Department of Labor, the necessary first step of the Green Card application process.

22.

In her May 13th e-mail, Attorney Holland represented to Mr. Rettig that the recruitment phase of the process should have begun in June or July, 2011, approximately four to six weeks after the prevailing wage request was filed.

23.

Attorney Holland never undertook the "recruitment" phase of the Green Card process, which, in this case, would have involved placement of advertisements for the job to permit equally qualified American citizens to apply for the position.

24.

On July 11, 2011, Attorney Holland represented in a letter addressed "To Whom It May Concern" that she was in the process of preparing TUV's Application for Alien Labor Certification on behalf of Mr. Rettig, as part of TUV's permanent residency application for Mr. Rettig and his family. A true and correct copy of the July 11, 2011 letter is attached as Exhibit "F."

25.

Attorney Holland never prepared and filed TUV's Application for Alien Labor Certification on behalf of Mr. Rettig, as part of TUV's permanent residency application for Mr. Rettig and his family.

26.

Having heard nothing of the status of his application for a Green Card for almost six months, Mr. Rettig sent an e-mail to Attorney Holland on November 9, 2011 to inquire about her progress with the application.  Attorney Holland did not respond in any way to Mr. Rettig's November 9, 2011 e-mail.  A true and correct copy of the November 9, 2011 e-mail is attached as Exhibit "E."

27.

TUV instructed Attorney Holland to have no further communication with Mr. Rettig.  (Exhibit "I").

28.

Mr. Rettig inquired of Nancy Culliney TUV's Human Resources office about the status of his Green Card application and she advised him that the matter would be discussed in a meeting with Mr. Rettig and Sebastian Oertel on January 6, 2012.

29.

On January 6, 2012, Mr. Rettig met with Sebastian Oertel and Nancy Culliney of TUV, at which time they presented to him a Confidential Separation Agreement and General Release of All Claims ("Separation Agreement"), which provides that his employment will be terminated on April 6, 2012 on the condition that he execute the Separation Agreement.  A true and correct copy of the Separation Agreement is attached as Exhibit "G."

30.

During the January 6, 2012 meeting, Mr. Rettig learned for the first time that TUV put his Green Card application "on hold" at some point prior to completion.

31.

The fact that the "recruitment" phase of the Green Card application process was never undertaken indicates TUV's placement of the process "on hold" occurred in or about June or July of 2011, assuming TUV or Attorney Holland ever started the process in the first place.

32.

Ms. Culliney indicated in a follow-up e-mail to Mr. Rettig dated January 11, 2012, "that [Thomas Rettig's] Green card process was initiated, and that it had been put on hold at the time the decision was made to eliminate the position of VP Business Development. [Nancy Culliney] indicated that she was unaware of the status of the process at the time that TUV put it on hold." A true and correct copy of the January 11, 2012 e-mail is attached as Exhibit "H."

33.

Mr. Rettig has declined to execute the Separation Agreement.

34.

As a consequence of TUV's termination of the Green Card application, Mr. Rettig and his family are in jeopardy of deportation, loss of income and the ability to earn income, the necessity for Olivia Eckhardt to withdraw from college, and substantial monetary damages. TUV's actions have also put Mr. Rettig and his family through hardship and distress, thus causing them mental anguish and emotional distress.

-8-

## COUNT I

## Breach of Employment Agreement

35.

Plaintiffs adopt and incorporate the allegations in paragraphs 1 through 34 of their Complaint as if they were fully set forth herein.

36.

TUV confirmed its intention to enter into an employment contract with Thomas Rettig in TUV's letter of July 23, 2010. (Exhibit "A").

37.

Mr. Rettig relied upon TUV's representation that he would be working under an employment agreement when he accepted TUV's offer of the position of Vice President of Business Development for TUV/RSL

38.

Mr. Rettig believed he was working under an employment agreement at all times during his employment with TUV/RSL.

39.

TUV's March 29, 2011 Offer of Employment sets forth the terms of Mr. Rettig's employment, including salary, benefits, vacation, IRA eligibility, and all other necessary terms of employment, including TUVs promise to sponsor Mr. Rettig and his family through the Green Card process.

40.

This March 29, 2011 Offer of Employment is a contract of employment between Mr. Rettig and TUV and TUV/RSL

41.

TUV's contractual promise to sponsor Mr. Retting and his family through the Green Card process established a definite term of employment for Mr. Rettig, to wit: the duration of the Green Card application process.

42.

TUV's promise to sponsor Mr. Rettig and his family through the Green Card process is part of the consideration for Mr. Rettig's agreement to accept the TUV/RSI position and relocate his family to Georgia.

43.

TUV's promise of Green Card sponsorship and Mr. Rettig's promise to move to Georgia and perform the functions of his position as Vice President of Business Development represents an exchange of mutually interdependent promises that constitute a valid and binding contract.

44.

Pursuant to the express terms of the agreement, Mr. Rettig's employment was intended to continue, at a minimum, until Green Cards were issued to Mr. Rettig and his family members or until the determination was made that Mr. Rettig was not eligible for a Green Card.

45.

TUV breached its employment agreement with Mr. Rettig by failing to fulfill its obligation under the contract to sponsor Mr. Rettig and his family through the Green Card process.

**46.**

TUV breached its employment agreement with Mr. Rettig by attempting to terminate his employment prior to the completion of the Green Card process.

**47.**

Mr. Rettig is entitled to damages for breach of the employment agreement, at a minimum, equal to the salary and benefits he would have earned through the completion of the Green Card process.

## COUNT II

### Breach of Contract

**48.**

Plaintiffs adopt and incorporate the allegations in paragraphs 1 through 47 of their Complaint as if they were fully set forth herein.

**49.**

TUV's promise to sponsor Mr. Rettig and his family through the Green Card process is consideration for Mr. Rettig's agreement to accept the TUV/RSI position and move his family to Georgia.

**50.**

In reliance on and as consideration for TUV's promise to sponsor him and his family through the Green Card process, Mr. Rettig agreed to leave a secure position of employment with a German-owned TUV entity in Connecticut, accept the position at TUV/RSI, move his family to Georgia, and enroll his daughter in college.

51.

TUV abandoned the application for Green Card status for Mr. Rettig and his family members without notice to Mr. Rettig and without Mr. Rettig's consent.

52.

TUV's breach of its agreement to sponsor Mr. Rettig and his family through the Green Card process has resulted, and will continue to result, in both monetary and non-monetary damages.

53.

TUV Rheinland, TUV Holding, and TUV/RSI are liable to Mr. Rettig for damages for breach of contract.

54.

Mr. Rettig and his family are entitled to specific performance under the contract, to wit: TUV's fulfillment of its obligation to sponsor his family through the Green Card process to its completion and continued employment with TUV/RSI until the process is complete.

## COUNT III

### Constructive Fraud

55.

Plaintiffs adopt and incorporate the allegations in paragraphs 1 through 54 of their Complaint as if they were fully set forth herein.

56.

Before the applications for Green Cards on behalf of Mr. Rettig and his family were complete, TUV instructed Attorney Holland to have no further communication with Mr. Rettig and to place the applications "on hold" without Mr. Rettig's knowledge or consent.

57.

TUV's instruction to Attorney Holland that she should have no further communication with Thomas Rettig demonstrates TUV's intention to actively conceal from Mr. Rettig the fact that his Green Card application had been placed "on hold."

58.

TUV owed a duty to Mr. Rettig and his family to complete the Green Card application process.

59.

TUV was and is aware that Mr. Rettig and his family relied upon TUV's promise to complete the application process for their Green Cards, and that they would be damaged both by TUV's failure to fulfill that obligation and by TUV's concealment of the fact that the process was terminated.

60.

TUV intentionally and wrongfully concealed from Mr. Rettig and his family the fact that TUV terminated its efforts to obtain Green Cards for the Rettigs.

61.

Mr. Rettig continued to fulfill his obligations as an employee for TUV/RSI without the knowledge that TUV had wrongfully and maliciously terminated the Green Card application process and in reliance on his justifiable belief that TUV or Attorney Holland were continuing the application process.

62.

Mr. Rettig did not learn of TUV's decision to place his Green Card application "on hold" until he met with Sebastian Oertel and Nancy Culliney, and was presented with the Separation Agreement on January 6, 2012.

63.

TUV knew that its failure to complete the Green Card application process would result in the loss of Mr. Rettig's ability to work in the United States on his termination from TUV/RSL.

64.

TUV knew that Mr. Rettig would be unable to secure Green Cards for himself and his family without sponsorship by an employer.

65.

TUV had a duty to inform Mr. Rettig of their decision to terminate the Green Card application process.

66.

But for TUV's fraudulent concealment of its decision to terminate the Green Card application process, Mr. Rettig would have taken action to secure alternative employment wherein he would have had an opportunity to restart the process of application for Green Cards for himself and his family.

67.

As a result of TUV's fraudulent concealment of its willful failure to perform an expressed item of consideration under its contract with Mr. Rettig, Mr. Rettig and his family have suffered direct and consequential damages.

68.

As a result of TUV's fraudulent concealment of its willful failure to perform an expressed item of consideration under its contract with Mr. Rettig, Mr. Rettig and his family are entitled to compensatory and punitive damages in an amount to be determined

based upon the evidence and the enlightened conscience of an impartial and informed jury.

## COUNT IV

### Promissory Estoppel and Detrimental Reliance

69.

Plaintiffs adopt and incorporate the allegations in paragraphs 1 through 68 of their Complaint as if they were fully set forth herein.

70.

TUV induced Mr. Rettig to quit his job and move his family from Connecticut through promises to employ him and sponsor him and his family through the Green Card application process.

71.

Mr. Rettig relied to his detriment upon TUV's and TUV/RSI's promises to employ him and sponsor him and his family through the Green Card application process when he left his job in Connecticut and moved himself and his family to Georgia.

72.

TUV either knew or reasonably should have expected that its promises of employment and to sponsor Mr. Rettig and his family *through the duration of* the Green Card application process would induce Mr. Rettig to quit his job in Connecticut and move his family to Georgia.

73.

Failing to enforce TUV's promises of employment and to sponsor Mr. Rettig and his family through the Green Card application process will lead to gross injustice, as Mr. Rettig

will lose his ability to live and work in the United States, and his daughter will lose her ability to live and study in the United States.

74.

Manifest injustice can only be avoided by enforcement of TUV's promises, pursuant to O.C.G.A. §13-3-44 to employ Mr. Rettig and sponsor him and his family through the duration of the Green Card application process. Monetary damages alone cannot adequately compensate Mr. Rettig and his family or prevent the injustice TUV's threatened breach of promise would inflict on them.

75.

Mr. Rettig and his family therefore request that this Court order specific performance of TUV's promises to employ Mr. Rettig and sponsor him and his family throughout the Green Card application process.

76.

Additionally, Mr. Rettig and his family have suffered damages, including mental anguish and emotional distress, by virtue of TUV's failure to fulfill its promises to employ him and sponsor him and his family throughout the Green Card application process. Mr. Rettig and his family are therefore entitled to damages sufficient to compensate them for the injury and distress caused by TUV's wrongful action and inaction.

## COUNT V

### Fraud

77.

Plaintiffs adopt and incorporate the allegations in paragraphs 1 through 76 of their Complaint as if they were fully set forth herein.

78.

TUV represented to Mr. Rettig and his family that it would sponsor him and his family throughout the Green Card application process. During the course of his employment, TUV represented to Mr. Rettig that it was in the process of obtaining Green Cards for him and his family. Such representations were false: TUV performed only rudimentary steps, if any, toward obtaining Green Cards for Mr. Rettig and his family, had no intention of assisting Mr. Rettig and his family through the entire application process, and abandoned any and all attempts to obtain Green Cards for Mr. Rettig and his family while still representing that it was working on obtaining Green Cards.

79.

TUV knew that its representations that it would sponsor Mr. Rettig and his family throughout the duration of the Green Card application process, and that it was in fact assisting Mr. Rettig and his family in obtaining Green Cards, were false.

80.

TUV intended to induce Mr. Rettig to quit his job in Connecticut, move his family to Georgia, and work for TUV/RSI through its representations that it would sponsor him and his family throughout the Green Card application process and that it was in fact assisting him and his family in obtaining Green Cards. Further, TUV knew that by switching employment from TUV Rheinland to TUV/RSI, Mr. Rettig was putting his and his family's immigration status at risk in the event TUV did not follow through with its promises to employ and sponsor Mr. Rettig and his family throughout the Green Card application process.

81.

-17-

Mr. Rettig and his family justifiably relied on TUV's representations, as they had no reason to suspect that TUV did not intend to live up to its promises and representations.

82.

Mr. Rettig and his family have suffered damages as a result of TUV's fraud in that Mr. Rettig forwent other employment opportunities, quit is job in Connecticut, put his and his family's immigration status at risk, relocated from Connecticut to Georgia, worked for TUV/RSI, enrolled his daughter in a Georgia college, and suffered mental anguish and emotional distress.

## COUNT VI

### O.C.G.A. § 13-6-11 Expenses of Litigation

83.

Plaintiffs adopt and incorporate the allegations in paragraphs 1 through 82 of their Complaint as if they were fully set forth herein.

84.

Mr. Rettig and his family are entitled to expenses of litigation under O.C.G.A. § 13-6-11 because TUV has acted in bad faith, been stubbornly litigious and caused the plaintiffs unnecessary trouble and expense.

85.

Specifically, TUV acted in bad faith by failing to fulfill its promises to employ Mr. Rettig and sponsor him and his family throughout the Green Card application process. TUV knew that such actions would put Mr. Rettig and his family's immigration status at risk and cause them great economic damages, mental anguish, and emotional distress. Despite its awareness of such consequences and the hardship through which it was putting

-18-

Mr. Rettig and his family, TUV breached its promises and representations by abandoning the Green Card process and concealing that abandonment from Mr. Rettig.

### 86.

TUV has been stubbornly litigious in refusing Mr. Rettig's and his family's efforts to resolve this matter without resort to litigation to enforce their rights, thereby causing Mr. Rettig and his family unnecessary trouble and expense.

### COUNT VII

### Punitive Damages under O.C.G.A. § 51-12-5.1

### 87.

Plaintiffs adopt and incorporate the allegations in paragraphs 1 through 86 of their Complaint as if they were fully set forth herein.

### 88.

Mr. Rettig and his family are entitled to punitive damages under O.C.G.A. § 51-12-5.1 because TUV's actions amount to willful misconduct, malice, fraud, wantonness, and conscious indifference to the consequences of its actions. TUV knew that its deliberate failure to live up to its promises and representations would cause hardship and anguish to Mr. Rettig and his family. Yet TUV made no effort to avoid such consequences or live up to its promises and representations. Compensatory damages are not sufficient to punish TUV and deter it from similar conduct in the future.

WHEREFORE Plaintiffs pray that the Court:

1. Enter an Interlocutory Injection to maintain the status quo;

2. Order specific performance of TUV's promise to employ Mr. Rettig at TUV/RSI for the duration of the Green Card application process and to sponsor Mr. Rettig and his family through the duration of the Green Card application process;

3. Award Mr. Rettig and his family compensatory damages;

4. Award Mr. Rettig and his family punitive damages;

5. Award Mr. Rettig and his family litigation expenses and attorneys' fees; and

6. Award such further relief and enter such further orders as the Court and an enlightened jury deem reasonable just.

This 14th day of February, 2012.

GOODMAN MCGUFFEY LINDSEY & JOHNSON, LLP
Attorneys for Plaintiffs Thomas Rettig,
Kerstin Rettig and Olivia Angelina Eckhardt

By:    *Fred R Lee*

FRED R. GREEN
GA State Bar No. 306845
fgreen@gmlj.com
JUDY FARRINGTON AUST
GA State Bar No. 028590
jaust@gmlj.com

3340 Peachtree Road NE, Suite 2100
Atlanta, GA 30326-1084
Phone: (404) 264-1500
Fax:   (404) 264-1737

7411-0001/Doc ID #1680096.doc

-20-

IN THE SUPERIOR COURT OF DEKALB COUNTY

STATE OF GEORGIA

THOMAS RETTIG, KERSTIN RETTIG
and OLIVIA ANGELINA ECKHARDT,

    Plaintiffs,

v.

TUV RHEINLAND RAIL SCIENCES,
INC., TUV RHEINLAND NORTH
AMERICA HOLDING, INC. and TUV
RHEINLAND OF NORTH AMERICA,
INC.,

    Defendants.

Civil Action
File No.: _____

---

## VERIFICATION

    Personally appeared before the undersigned officer, duly authorized by law to administer oaths, came **Thomas Rettig**, who after first being duly sworn and deposed, states that the facts contained in the foregoing Complaint are accurate.

                                    **Thomas Rettig**

Sworn to and subscribed before me
this 2nd day of February, 2012.

_____
Notary Public

My Commission Expires: 5/12/2012

IN THE SUPERIOR COURT OF DEKALB COUNTY

STATE OF GEORGIA

THOMAS RETTIG, KERSTIN RETTIG
and OLIVIA ANGELINA ECKHARDT,

    Plaintiffs,

v.

TUV RHEINLAND RAIL SCIENCES,
INC., TUV RHEINLAND NORTH
AMERICA HOLDING, INC. and TUV
RHEINLAND OF NORTH AMERICA,
INC.,

    Defendants.

Civil Action
File No.: _____

---

## VERIFICATION

    Personally appeared before the undersigned officer, duly authorized by law to administer oaths, came **Kerstin Rettig,** who after first being duly sworn and deposed, states that the facts contained in the foregoing Complaint are accurate.

_____
**Kerstin Rettig**

Sworn to and subscribed before me
this _____ day of _____, 2012.

_____
Notary Public

My Commission Expires: __4-27-15·__

JUAN MENDEZ
NOTARY PUBLIC
Gwinnett County - State of Georgia
My Comm. Expires April 27, 2015

IN THE SUPERIOR COURT OF DEKALB COUNTY

STATE OF GEORGIA

THOMAS RETTIG, KERSTIN RETTIG
and OLIVIA ANGELINA ECKHARDT,

    Plaintiffs,

v.

TUV RHEINLAND RAIL SCIENCES,
INC., TUV RHEINLAND NORTH
AMERICA HOLDING, INC. and TUV
RHEINLAND OF NORTH AMERICA,
INC.,

    Defendants.

Civil Action
File No.: _____

## VERIFICATION

Personally appeared before the undersigned officer, duly authorized by law to administer oaths, came **Olivia Angelina Eckhardt**, who after first being duly sworn and deposed, states that the facts contained in the foregoing Complaint are accurate.

_Olivia Eckhardt_
**Olivia Angelina Eckhardt**

Sworn to and subscribed before me
this 2 day of February , 2012.

_Jessica Mathis_
Notary Public

My Commission Expires: DEC. 15, 2013

JESSICA MATHIS
NOTARY PUBLIC
Fulton County - State of Georgia
My Comm. Expires Dec. 15, 2013

# EXHIBIT A


TÜVRheinland®
Precisely Right.

July 23, 2010

Mr. Thomas Rettig
11 South Lake Shore Drive
Brookfield, CT 06804

Re:   Transfer of Employment from TUV Rheinland of North America, Inc., to TUV
      Rheinland Rail Sciences, Inc.

Dear Thomas:

As part of the acquisition process, TUV Rheinland Rail Sciences, Inc. ("TUVRSI") is in
the process of creating your contract of employment as well as other new hire documents
(handbook, etc). Your contract will be contingent upon successful attainment of a non-
immigrant work visa. Once this non-immigrant visa is approved and attained TUV
Rheinland Rail Sciences, Inc will start the process of attaining a Green Card for you and
your family. Since the non-immigrant visa must be obtained before you start your
employment with TUV Rheinland Rail Sciences, Inc., you will remain on the TUV
Rheinland of North America Inc.'s payroll, benefits, and 401k plan. Once the non-
immigrant visa is obtained you will be considered an employee of TUV Rheinland Rail
Sciences, Inc.

As part of the above mentioned this letter will serve as notice of your transfer of
employment from TUV Rheinland of North America, Inc to TUV Rheinland Rail
Sciences, Inc., in the position of Vice President of Business Development with the new
salary of $100,000.00.

Please feel free to contact me with any questions or concerns regarding this matter.

Sincerely,

Cindy Doyle
Human Resources Manager
TUV Rheinland of North America, Inc.

# EXHIBIT B

*Sent 4/25/2011*

**▲ TÜVRheinland®**
Precisely Right.

Human Resources

## OFFER OF EMPLOYMENT

Mr. Thomas Rettig
2989 Commonwealth Circle
Alpharetta, GA 30004

Cindy Doyle
cdoyle@us.tuv.com

March 29, 2011

Dear Thomas:

As previously discussed, due to the acquisition of TUV Rheinland Rail Services, Inc. Your employment has been transferred from TUV Rheinland of North America, Inc. to TUV Rheinland Rail Services Inc., effective August 1, 2010. Your new title is Vice President of Business Development- Rail Services. You will be working out of the Scottdale, GA office, reporting to Gary Wolf- President. Your annual salary will be $100,000.00 and is being paid semi-monthly at $4,166.66.

In the enclosed binder, you will find the Employee Handbook, Confidentiality Agreement, etc. Please look through this binder to acclimate your self to your new position as well as the policies and procedures of TUV Rhineland Rail Sciences, Inc. As a former employee of TUV Rheinland of North America, Inc. the following will be grandfathered:

- 21 vacation days per year
- Hallesche Insurance Plan Coverage (plan premium rates as well as availability , is subject to change at the companies discretion)

Please see attached Employee Handbook for more information regarding Holidays, Sick time, etc. As an employee of TUV Rheinland Rail Sciences, Inc you are eligible to participate in the Benefit Plans as well as the Simple IRA Plan, offered by the company. If you decide to enroll in these plans, please contact me for further information. As you are no longer employed through TUV Rheinland of North America, Inc, your participation in the companies 401K Plan will no longer be possible. Please contact Susan Robidoux, HR Generalist at TUV Rheinland of North America, Inc. to discuss proper documentation and processing.

*See Cindy's*
*4/20/14 email.*

As part of this transfer it was agreed that the company would sponsor you and your family through the Green Card process.

TUV Rheinland
of North America, Inc.
North American Headquarters

12 Commerce Road
Newtown, CT 06470

Tel    203-426-0888
Fax    203-426-4009
Toll Free  TUV-RHEINLAND
Mail   info@tuv.com
Web    www.tuv.com

Member of
TÜV Rheinland Group



TÜVRheinland®
Precisely Right.

2

I asked that you read thought all the enclosed information as well as sign and return the necessary documentation, and return to me at your earliest convenience.

If you have any questions regarding the above mentioned, please feel free to contact me at 203-426-0888 x156 or via email at cdoyle@us.tuv.com.

Sincerely,

Cindy Doyle
Human Resources Shared Service Manager
TUV Rheinland of North America, Inc

## ACCEPTANCE OF EMPLOYMENT OFFER

Thomas Rettig

4 / 23 / 2011
Date

# EXHIBIT C



"Hilde Holland"
<hholland@wg-law.com>

02/04/2011 10:21 PM

To   "Cindy Doyle" <CDoyle@us.tuv.com>
cc   <sschmitt@us.tuv.com>, "Thomas Rettig"
     <TRettig@us.tuv.com>
bcc

Subject   FW: RETTIG, Thomas/TUV Rheinland Rail Sciences, Inc. -
          PERM Application; Request for Info

Hi Cindy,

In order for us to complete the requisite forms for TUV Rheinland Rail Sciences, Inc.'s PERM
application on behalf of Mr. Thomas Rettig, we would like to obtain the following initial items as
soon as possible:

I.  From TUV Rheinland Rail Sciences, Inc.:

1.  Confirmation of Mr. Rettig's duties in the permanent position of Vice President, Business
Development (see attached sheet; please review for accuracy and amend as necessary);

2.  Minimum academic requirements (not preferences) for the prospective permanent position
(please indicate type of degree [e.g., Bachelor's, Master's, etc.] and field of study);

3.  Minimum years of employment experience required (not preferred) for the prospective
permanent position;

4.  Job title of the individual to whom Mr. Rettig will report;

5.  Number and type of workers (directly and/or indirectly) that Mr. Rettig will supervise as Vice
President, Business Development (please indicate the number of supervisors and staff
separately);

6.  Listing of any required skills, licenses, specialized knowledge, languages (including computer
languages), programs, etc.;

7.  Mr. Rettig's prospective annual salary;

8.  Number of hours Mr. Rettig will work per week;

9.  Mr. Rettig's hourly work schedule (e.g., from 9:00 am to 5:00 pm);

10.  Please indicate whether travel will be required, and if so, explain any travel requirements and
locations (city, state);

11.  Current number of employees;

12.  Complete address of the permanent job site; and

13.  Confirmation that TUV Rheinland Rail Sciences, Inc. did not experience any layoffs within the
last 6 months (in the same or similar occupation and at the same work sites) and has no plans for
layoffs in the next 6 months (in the same or similar occupation and at the same work sites).

**II.  From Mr. Rettig:**

1. Completion of the attached W&G Applicant Questionnaire;

2. A letter from each of Mr. Rettig's former employers with whom he performed work relating to his prospective position, each confirming his prior employment, including job title(s), full-time employment status, dates of employment (from month/day/year to month/day year), and detailed listing of his job duties;

3. Scanned copies of Mr. Rettig's academic credentials (diplomas and transcripts/mark sheets);

4. Mr. Rettig's completion (in draft) of the attached DS-9089, Sections J, K, and L (please provide employment information for all related former positions, even if longer than 3 years ago; please include supervisor's name and telephone number for all positions);

5. Scanned color copy of both sides of Mr. Rettig's current Form I-94 – Arrival/Departure Record (small, white card stapled in the passport) that he received on his most recent entry into the United States;

6. Scanned color copy of Mr. Rettig's passport (cover to cover), including any U.S. visa stamps; and

7. Copy of paystubs for the month of PERM filing (to be provided after filing).

Please note that the above list is not exhaustive.  We may need additional information and/or documentation from you as we proceed.

In the meantime, should you have any questions in regard to this matter, please feel free to contact us.

Kind regards,

HILDE HOLLAND | WUERSCH & GERING LLP
100 Wall Street, 21st Fl. | New York, New York 10005
212-509-4715 (direct) | 212-509-5050 (firm) | 212-509-9559 (fax)
hilde.holland@wg-law.com | www.wg-law.com

This message and any attachments hereto contain confidential information and information which may be subject to the attorney-client privilege. It is intended for the individual or entity named above.  If you are not the intended recipient, please do not read, copy, use or disclose this communication to others; also please notify the sender by replying to this message, and then delete it from your system.  Thank you.

Any advice in this email concerning a federal tax issue is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding any tax penalties that can be imposed by the Internal Revenue Service, or for promoting, marketing or recommending any tax-related matters addressed herein.

Draft Job Duties - Rettig.doc   W&G Applicant Questionnaire.DOC   ETA 9089 - Sections J, K and L.pdf

# EXHIBIT D

RETTIG, Thomas/TUV Rheinland Rail Sciences, Inc. - PERM Application; Request for L..   Page 1 of 1

From: tomrettig <tomrettig@aol.com>
To: hholland <hholland@wg-law.com>
Subject: RETTIG, Thomas/TUV Rheinland Rail Sciences, Inc. - PERM Application; Request for info
Date: Sat, Apr 2, 2011 4:16 pm
Attachments: Resume_Thomas_Rettig_2011.pdf (27K), Rettig_Academic_Credentials.pdf (743K), Rettig_EmplVerif_Dornier.pdf (50K), Rettig_EmplVerif_MGB.pdf (51K), Rettig_EmplVerif_Siemens-Berlin.pdf (53K), Rettig_EmplVerif_Siemens-Duewag.pdf (49K), Rettig_EmplVerif_Siemens-Sacramento.pdf (70K), Rettig_ETA_9089_J-K-L.pdf (272K), Rettig_Form_I-94.pdf (563K), Rettig_Passport.pdf (4643K), W&G_Applicant_Questionnaire_RETTIG_March2011.DOC (128K)

Dear Mrs. Holland,

Attached please find the following information required for the PERM application according to your Feb. 4, 2011 email. I would appreciate a brief confirmation that you received this email. Please let me know of any other information you may need.

Best Regards,
Thomas Rettig

From Mr. Rettig:

1. Completion of the attached W&G Applicant Questionnaire;

2. A letter from each of Mr. Rettig's former employers with whom he performed work relating to his prospective position, each confirming his prior employment, including job title(s), full-time employment status, dates of employment (from month/day/year to month/day/year), and detailed listing of his job duties;

3. Scanned copies of Mr. Rettig's academic credentials (diplomas and transcripts/mark sheets);

4. Mr. Rettig's completion (in draft) of the attached DS-9089, Sections J, K ,and L (please provide employment information for all related former positions, even if longer than 3 years ago; please include supervisor's name and telephone number for all positions);

5. Scanned color copy of both sides of Mr. Rettig's current Form I-94 – Arrival/Departure Record (small, white card stapled in the passport) that he received on his most recent entry into the United States;

6. Scanned color copy of Mr. Rettig's passport (cover to cover), including any U.S. visa stamps;

OMB Approval: 1205-0451
Expiration Date: 03/31/2008

Application for Permanent Employment Certification
ETA Form 9089
U.S. Department of Labor



**I. Recruitment Information Continued**

| 12. Date of second newspaper advertisement or date of publication of journal identified in question 11: |
|---|

**d. Professional Recruitment Information – Complete if the answer to question I.a.1 is YES or if the answer to I.a.2-B is YES. Complete at least 3 of the items.**

| 13. Dates advertised at job fair<br>From:          To: | 14. Dates of on-campus recruiting<br>From:          To: |
|---|---|
| 15. Dates posted on employer web site<br>From:          To: | 16. Dates advertised with trade or professional organization<br>From:          To: |
| 17. Dates listed on job search web site<br>From:          To: | 18. Dates listed with private employment firm<br>From:          To: |
| 19. Dates advertised with employee referral program<br>From:          To: | 20. Dates advertised with campus placement office<br>From:          To: |
| 21. Dates advertised with local or ethnic newspaper<br>From:          To: | 22. Dates advertised with radio or TV ads<br>From:          To: |

**e. General Information – All must complete this section.**

| 23. Has the employer received payment of any kind for the submission of this application? | ☐ Yes   ☐ No | |
|---|---|---|
| 23-A. If Yes, describe details of the payment including the amount, date and purpose of the payment : | | |
| 24. Has the bargaining representative for workers in the occupation in which the alien will be employed been provided with notice of this filing at least 30 days but not more than 180 days before the date the application is filed? | ☐ Yes   ☐ No | ☐ NA |
| 25. If there is no bargaining representative, has a notice of this filing been posted for 10 business days in a conspicuous location at the place of employment, ending at least 30 days before but not more than 180 days before the date the application is filed? | ☐ Yes   ☐ No | ☐ NA |
| 26. Has the employer had a layoff in the area of intended employment in the occupation involved in this application or in a related occupation within the six months immediately preceding the filing of this application? | ☐ Yes   ☐ No | |
| 26-A. If Yes, were the laid off U.S. workers notified and considered for the job opportunity for which certification is sought? | ☐ Yes   ☐ No | ☐ NA |

**J. Alien Information (This section must be filled out. This information must be different from the agent or attorney information listed in Section E).**

| 1. Alien's last name  *Rettig* | First name  *Thomas* | Full middle name |
|---|---|---|
| 2. Current address 1  *2989 Commonwealth Circle* | | |
| Address 2 | | |

| 3. City  *Alpharetta* | State/Province  *GA* | Country  *United States* | Postal code  *30004* |
|---|---|---|---|

4. Phone number of current residence  *678 - 566 - 0411*

| 5. Country of citizenship  *Germany* | 6. Country of birth  *Germany* |
|---|---|
| 7. Alien's date of birth  *March 28, 1965* | 8. Class of admission |
| 9. Alien registration number (A#) | 10. Alien admission number (I-94)  *50372417424* |

11. Education: highest level achieved relevant to the requested occupation:

☐ None   ☐ High School   ☐ Associate's   ☐ Bachelor's   ☒ Master's   ☐ Doctorate   ☐ Other

OMB Approval:  1205-0451
Expiration Date:  03/31/2008

**Application for Permanent Employment Certification**
**ETA Form 9089**
**U.S. Department of Labor**



### J. Alien Information Continued

| 11-A. If Other indicated in question 11, specify |
|---|

| 12. Specify major field(s) of study | Mechanical Engineering |
|---|---|

| 13. Year relevant education completed | 1991 |
|---|---|

14. Institution where relevant education, specified in question 11 was received
*University of Rostock, Germany*

15. Address 1 of conferring institution
*Justus-von-Liebig-Weg 6*

Address 2

| 16. City *Rostock* | State/Province | Country *Germany* | Postal code *18059* |
|---|---|---|---|

| 17. Did the alien complete the training required for the requested job opportunity, as indicated in question H.5? | ☒ Yes ☐ No ☐ NA |
|---|---|
| 18. Does the alien have the experience as required for the requested job opportunity indicated in question H.6? | ☒ Yes ☐ No ☐ NA |
| 19. Does the alien possess the alternate combination of education and experience as indicated in question H.8? | ☐ Yes ☐ No ☒ NA |
| 20. Does the alien have the experience in an alternate occupation specified in question H.10? | ☐ Yes ☐ No ☒ NA |
| 21. Did the alien gain any of the qualifying experience with the employer in a position substantially comparable to the job opportunity requested? | ☒ Yes ☐ No ☐ NA |
| 22. Did the employer pay for any of the alien's education or training necessary to satisfy any of the employer's job requirements for this position? | ☒ Yes ☐ No |
| 23. Is the alien currently employed by the petitioning employer? | ☒ Yes ☐ No |

### K. Alien Work Experience

List all jobs the alien has held during the past 3 years.  Also list any other experience that qualifies the alien for the job opportunity for which the employer is seeking certification.

**a. Job 1**

| 1. Employer name | *TUV Rheinland Rail Sciences, Inc.* |
|---|---|

| 2. Address 1 | *411 N Clarendon Ave* |
|---|---|

Address 2

| 3. City *Scottdale* | State/Province *GA* | Country *United States* | Postal code *30079* |
|---|---|---|---|

| 4. Type of business *Railroad Engineering + Testing* | 5. Job title *Vice President Business Devel.* |
|---|---|

| 6. Start date *Aug 2010* | 7. End date *present* | 8. Number of hours worked per week *50* |
|---|---|---|

OMB Approval: 1205-0451
Expiration Date: 03/31/2008

Application for Permanent Employment Certification
ETA Form 9089
U.S. Department of Labor



**K. Alien Work Experience Continued**

9. Job details (duties performed, use of tools, machines, equipment, skills, qualifications, certifications, licenses, etc. Include the phone number of the employer and the name of the alien's supervisor.)

- Organize and conduct domestic and international business development
- Develop and write project proposals
- Attend sales visits, corporate presentations, trade shows, conferences
- Report on marketing and sales data
- Liaise between employer and other international TUV Rheinland group affiliates
- Identify new domestic and international markets/services
- Direct marketing efforts
- Perform regular reviews of trade periodicals, business news, other sources

Supervisor: Mr. Gary Wolf, President  ph. 404-294-5300

**b. Job 2**

| | |
|---|---|
| 1. Employer name | TUV Rheinland of North America, Inc. |
| 2. Address 1 | 12 Commerce Rd |
| Address 2 | |

| 3. City | State/Province | Country | Postal code |
|---|---|---|---|
| Newtown | CT | United States | 06470 |

| 4. Type of business | 5. Job title |
|---|---|
| Product Testing & Approvals | Division Manager |

| 6. Start date | 7. End date | 8. Number of hours worked per week |
|---|---|---|
| July 2006 | July 2010 | 50 |

9. Job details (duties performed, use of tools, machines, equipment, skills, qualifications, certifications, licenses, etc. Include the phone number of the employer and the name of the alien's supervisor.)

- Managed the Guided Transport Systems Division
- Directed projects in the area of rail equipment safety assessments and compliance testing
- Developed and enforced instructions and procedures for performance of tests, assessments, inspections, reviews and certifications for transport Systems
- Directed operations of engineers
- Conducted internal audits and process reviews

Supervisor: Mr. Deep Krishnan, Sr. Vice President  ph. 617-926-4888

**c. Job 3**

| | |
|---|---|
| 1. Employer name | |
| 2. Address 1 | |
| Address 2 | |

| 3. City | State/Province | Country | Postal code |
|---|---|---|---|
| | | | |

| 4. Type of business | 5. Job title |
|---|---|
| | |

| 6. Start date | 7. End date | 8. Number of hours worked per week |
|---|---|---|
| | | |

OMB Approval: 1205-0451
Expiration Date: 03/31/2008

Application for Permanent Employment Certification
ETA Form 9089
U.S. Department of Labor



**K. Alien Work Experience Continued**

9. Job details (duties performed, use of tools, machines, equipment, skills, qualifications, certifications, licenses, etc. Include the phone number of the employer and the name of the alien's supervisor.)

**L. Alien Declaration**

*I declare under penalty of perjury that Sections J and K are true and correct. I understand that to knowingly furnish false information in the preparation of this form and any supplement thereto or to aid, abet, or counsel another to do so is a federal offense punishable by a fine or imprisonment up to five years or both under 18 U.S.C. §§ 2 and 1001. Other penalties apply as well to fraud or misuse of ETA immigration documents and to perjury with respect to such documents under 18 U.S.C. §§ 1546 and 1621.*

*In addition, I further declare under penalty of perjury that I intend to accept the position offered in Section H of this application if a labor certification is approved and I am granted a visa or an adjustment of status based on this application.*

| 1. Alien's last name Rettig | First name Thomas | Full middle name |
|---|---|---|
| 2. Signature Thomas Rettig | Date signed April 2, 2011 | |

*Note – The signature and date signed do not have to be filled out when electronically submitting to the Department of Labor for processing, but must be complete when submitting by mail. If the application is submitted electronically, any resulting certification MUST be signed immediately upon receipt from DOL before it can be submitted to USCIS for final processing.*

**M. Declaration of Preparer**

| 1. Was the application completed by the employer? If No, you must complete this section. | ☐ Yes | ☐ No |
|---|---|---|

*I hereby certify that I have prepared this application at the direct request of the employer listed in Section C and that to the best of my knowledge the information contained herein is true and correct. I understand that to knowingly furnish false information in the preparation of this form and any supplement thereto or to aid, abet, or counsel another to do so is a federal offense punishable by a fine, imprisonment up to five years or both under 18 U.S.C. §§ 2 and 1001. Other penalties apply as well to fraud or misuse of ETA immigration documents and to perjury with respect to such documents under 18 U.S.C. §§ 1546 and 1621.*

| 2. Preparer's last name | First name | Middle initial |
|---|---|---|
| 3. Title | | |
| 4. E-mail address | | |
| 5. Signature | Date signed | |

*Note – The signature and date signed do not have to be filled out when electronically submitting to the Department of Labor for processing, but must be complete when submitting by mail. If the application is submitted electronically, any resulting certification MUST be signed immediately upon receipt from DOL before it can be submitted to USCIS for final processing.*

# EXHIBIT E

RE: Status PERM?
Thomas Rettig   to: Hilde Holland
Cc: "Thomas Rettig"

11/09/2011 05:27 PM

Dear Mrs. Holland,

Just touching base to see if any update is available on this?
Appreciate it!

*No response!*

TUV Rheinland Rail Sciences, Inc.
411 N Clarendon Ave
Scottdale, GA 30079-0885

Thomas Rettig
Vice President Business Development
Tel    +1 (404) 294-5300
Cell   +1 (203) 278-4775
Fax    +1 (404) 294-5423
Email trettig@us.tuv.com
http://www.tuv.com

In the event that this email contains any proposal, or the acceptance of any proposal, by TUV Rheinland
Rail Sciences, Inc. to provide any testing, consulting, or other professional services, please be advised
that such proposal or acceptance is made subject to the TUV Rheinland Rail Sciences, Inc. General
Terms and Conditions which are incorporated herein as though fully set forth in this email. You are hereby
agreeing to accept each and every one of the TUV Rheinland Rail Sciences, Inc. General Terms and
Conditions. To obtain a copy of the General Terms and Conditions, please contact the sender immediately
via email, or call the office at 404.294.5300, or visit our website, www.tuv.com.

| "Hilde Holland"      | Dear Mr. Rettig, | 05/13/2011 04:16:51 PM |
|---|---|---|

From:    "Hilde Holland" <hholland@wg-law.com>
To:      "Thomas Rettig" <TRettig@us.tuv.com>
Date:    05/13/2011 04:16 PM
Subject: RE: Status PERM?

Dear Mr. Rettig,

We have analyzed the position and your credentials and will file the requisite prevailing wage request
with DOL next week. This process takes 4-6 weeks, and we will then post the requisite ad postings. I
keep you posted.

Kind regards,

HILDE HOLLAND | WUERSCH & GERING LLP
100 Wall Street, 21st Fl. | New York, New York 10005
212-509-4715 (direct) | 212-509-5050 (firm) | 212-509-9559 (fax)
hilde.holland@wg-law.com | www.wg-law.com

This message and any attachments hereto contain confidential information and information which may be subject to the attorney-client privilege.
It is intended for the individual or entity named above. If you are not the intended recipient, please do not read, copy, use or disclose this
communication to others; also please notify the sender by replying to this message and then delete it from your system. Thank you.

Any advice in this email concerning a federal tax issue is not intended or written to be used and cannot be used by any taxpayer for the purpose

of avoiding any tax penalties that can be imposed by the Internal Revenue Service or for promoting, marketing or recommending any tax-related matters addressed herein.

From: Thomas Rettig [mailto:TRettig@us.tuv.com]
Sent: Friday, May 13, 2011 4:01 PM
To: Hilde Holland
Subject: Status PERM?

Dear Mrs. Holland,

I am just touching base to see if there is an update on the PERM application progress available? Since I haven't heard anything for a while I assume the information and documents provided a while ago have been sufficient

Best Regards,
Thomas Rettig

TUV Rheinland Rail Sciences, Inc.
411 N Clarendon Ave
Scottdale, GA 30079-0885

Thomas Rettig
Vice President Business Development
Tel     +1 (404) 294-5300
Cell    +1 (203) 278-4775
Fax    +1 (404) 294-5423
Email  trettig@us.tuv.com
http://www.tuv.com

In the event that this email contains any proposal, or the acceptance of any proposal, by TUV Rheinland Rail Sciences, Inc. to provide any testing, consulting, or other professional services, please be advised that such proposal or acceptance is made subject to the  TUV Rheinland Rail Sciences, Inc. General Terms and Conditions which are incorporated herein as though fully set forth in this email You are hereby agreeing to accept each and every one of the  TUV Rheinland Rail Sciences, Inc. General Terms and Conditions. To obtain a copy of the General Terms and Conditions, please contact the sender immediately via email or call the office at 404.294.5300, or visit our website, www.tuv.com.

Please be advised that TEST RESULTS, TEST REPORTS, CERTIFICATIONS, TEST MARKS and any other STATEMENTS regarding a work order are as a matter of principle not issued via e-mail! Any communications via e-mail regarding such matters are for informational purposes only, shall not be relied on, and do not replace or anticipate the formal notification regarding certification, test marks, test results or other decisions in accordance with our Testing and Certification Regulations.

# EXHIBIT F

# WUERSCH & GERING LLP

Hilde Holland
Direct Line:   212-509-4715
Email:        hilde.holland@wg-law.com

July 11, 2011

TO WHOM IT MAY CONCERN

Re:      Thomas Rettig-Application for Permanent Residency Application
         Our Ref.:    8022-024

Dear Madam/Sir:

We are the immigration attorneys for TUV Rheinland Rail Sciences, Inc. ("TUV"), Mr. Thomas Rettig's current U.S. employer.

We herewith confirm that we are currently in the process of preparing TUV's Application for Alien Labor Certification, as part of TUV's permanent residency application for Mr. Rettig and his family, including his stepchild, Olivia Eckhard.

Consequently, legally permissible steps have been taken toward obtaining permanent residency status for Mr. Thomas Rettig, and his derivative immediate family members.

Please do not hesitate to contact me if you have any questions.

Kind regards,

Hilde Holland

# EXHIBIT G

January 6, 2011

2989 Commonwealth Circle
Alpharetta, GA 30004

Re:   Confidential Separation Agreement and General
      Release of All Claims

Dear Thomas Rettig :

This letter confirms that on January 6, 2011, I personally delivered to you the enclosed Confidential Separation Agreement and General Release of All Claims ("Separation Agreement").   You have up to 21 days after receipt of this Separation Agreement consider whether to sign and date this Separation Agreement, in which you waive important rights, including those under the Age Discrimination in Employment Act of 1967.  We advise you to consult with an attorney of your choosing prior to signing this Separation Agreement concerning the rights you are waiving as well as all other terms of this Separation Agreement.

Very truly yours,

TUV Rheinland of North America, Inc.

Sebastian Oertel

## SEPARATION AGREEMENT AND GENERAL RELEASE

TUV Rheinland Rail Sciences, Inc. ("RSI") and Thomas Rettig, Mr. Rettig's heirs, executors, administrators, successors, and assigns (collectively referred to as "Employee"), agree that:

1.    **Last Day of Employment.**  Employee's last day of employment with RSI is April 6, 2012.

2.    **Consideration.**  In consideration for Employee signing this Agreement and General Release, the expiration of the seven (7) day revocation period without Employee's revocation of the Agreement and General Release, Employee's execution of the Reaffirmation Provision attached hereto as Exhibit A on the last date of the three (3) month Notice Period (see subpart (a) below), and Employee's compliance with the terms of this Agreement and General Release and Reaffirmation Provision, RSI agrees:

a.    to pay to Employee salary continuation at Employee's base rate of pay, less lawful deductions, in accordance with RSI's regular payroll practices for three months (the "Notice Period") to commence on the next payroll period after Employee executes this agreement. This amount will be reported on Employee's IRS form W2. During this Notice Period, Employee may continue his health insurance coverage under the health insurance plan provided to Employee immediately prior to the Last Day of Employment. Thereafter, Employee shall be entitled to elect COBRA coverage at Employee's own expense;

b.    to pay to Employee a lump sum of either ten thousand dollars ($10,000.00) or two thousand dollars ($2,000.00), less lawful deductions, within ten (10) business days after the last date of the three (3) month Notice Period. This will be reported on Employee's IRS form W2. RSI will pay Employee ten thousand dollars, less lawful deductions, if Employee is unable to provide other employment within the United States within the Notice Period and must relocate outside of the United States. If, however, Employee finds other employment within the United States and does not have to relocate outside of the United States, RSI will pay Employee two thousand dollars, less lawful deductions. This paragraph may not be construed to mean that RSI will pay Employee twelve thousand dollars.

3.    **No Consideration Absent Execution of this Agreement.**  Employee understands and agrees that Employee would not receive the monies and/or benefits specified in paragraph "2" above, except for Employee's execution of this Separation Agreement and General Release, expiration of the seven (7) day revocation period without Employee's revocation of the Separation Agreement and General Release, Employee's execution of the Reaffirmation Provision attached hereto as Exhibit A, and the fulfillment of the promises contained herein.

4.    **General Release of All Claims.**  Employee knowingly and voluntarily releases and forever discharges TUV Rheinland Rail Sciences, Inc., its parent corporations, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, including TUV Rheinland of North America, Inc. and TUV Rheinland North American Holding, Inc., and their

current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and its employee benefit plans and programs and their administrators and fiduciaries (collectively referred to throughout the remainder of this Separation Agreement and General Release as "Releasees"), of and from any and all claims, known and unknown, asserted or unasserted, which Employee has or may have against Releasees as of the date of execution of this Separation Agreement and General Release, including, but not limited to, any alleged violation of:

- Title VII of the Civil Rights Act of 1964;
- The Civil Rights Act of 1991;
- Sections 1981 through 1988 of Title 42 of the United States Code;
- The Employee Retirement Income Security Act of 1974 (except for any vested benefits under any tax qualified benefit plan);
- The Immigration Reform and Control Act;
- The Americans with Disabilities Act of 1990;
- The Age Discrimination in Employment Act of 1967;
- The Worker Adjustment and Retraining Notification Act;
- The Fair Credit Reporting Act;
- The Family and Medical Leave Act;
- The Equal Pay Act;
- The National Labor Relations Act, to the extent permitted by law;
- The Older Workers Benefit Protection Act;
- The Consolidated Omnibus Budget Reconciliation Act, to the extent permitted by law;
- The Georgia AIDS Confidentiality Act, O.C.G.A. § 24-9-47;
- The Georgia Equal Pay Act, O.C.G.A. § 34-5-1 et seq.;
- The Georgia Age Discrimination in Employment Act, O.C.G.A. § 34-1-2;
- The Georgia Equal Employment for Persons with Disabilities Code, O.C.G.A. § 34-6A-1 et seq.;
- The Georgia Wage Payment and Work Hour Laws;
- The City of Atlanta Anti-Discrimination Ordinance, Part II, Chapter 94, Article 11, § 94-10, et seq.;
- any other federal, state or local law, rule, regulation, or ordinance;
- any public policy, contract, tort, or common law; or
- any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters.

If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which RSI or any other Releasee identified in this Separation Agreement and General Release is a party. If, without Employee's prior knowledge and consent, he is made a member of a class in any proceeding against RSI or any other Releasee, he agrees to opt out of the class at the first opportunity.

Accepted by: _____ Thomas Rettig          _____RSI                          Page 2 of 5

5.    **Acknowledgments and Affirmations.**

Employee affirms that Employee has not filed, caused to be filed, or presently is a party to any claim against RSI.

Employee also affirms that Employee has been paid and/or has received all compensation, wages, bonuses, commissions, and/or benefits to which Employee may be entitled. Employee affirms that Employee has been granted any leave to which Employee was entitled under the Family and Medical Leave Act or related state or local leave or disability accommodation laws.

Employee further affirms that Employee has no known workplace injuries or occupational diseases.

Employee also affirms that Employee has not divulged any proprietary or confidential information of RSI and will continue to maintain the confidentiality of such information consistent with RSI's policies and/or common law as well as the Confidentiality Agreement that Employee signed on April 23, 2011 which is attached as Exhibit B.

Employee further affirms that Employee has not been retaliated against for reporting any allegations of wrongdoing by RSI or its officers, including any allegations of corporate fraud. The Parties acknowledge that this Separation Agreement and General Release does not limit any party's right, where applicable, to file or participate in an investigative proceeding of any federal, state or local governmental agency. To the extent permitted by law, Employee agrees that if such an administrative claim is made, Employee shall not be entitled to recover any individual monetary relief or other individual remedies.

Employee affirms that all of RSI's decisions regarding Employee's pay and benefits through the date of Employee's separation of employment were not discriminatory based on age, disability, race, color, sex, religion, national origin or any other classification protected by law.

6.    **Cooperation.** During the Notice Period, Employee will make himself available, including responding to telephone calls or emails or coming into the office, upon request to provide transition assistance to RSI and respond to any requests for information by RSI or its agents concerning matters relating to his employment, job duties or about which he has personal knowledge of information. RSI understands that his cooperation during the Transition Period is a material requirement of this Confidential Agreement and General Release and that should he fail in good faith to provide such assistance, he will not be eligible to receive the consideration described in Section 2 above.

7.    **Confidentiality and Return of Property.** Employee agrees not to disclose any information regarding the underlying facts leading up to or the existence or substance of this Separation Agreement and General Release, including the amount of consideration, except to Employee's spouse, tax advisor, and/or an attorney with whom Employee chooses to consult regarding Employee's consideration of this Separation Agreement and General Release, or pursuant to court order, subpoena or as otherwise required by law.

Accepted by: _____ Thomas Rettig             _____ RSI                              Page 3 of 5

Employee affirms that Employee has returned all of RSI's property, documents, and/or any confidential information in Employee's possession or control. Employee also affirms that Employee is in possession of all of Employee's property that Employee had at RSI's premises and that RSI is not in possession of any of Employee's property.

8.      **Nondisparagement.** Employee agrees that Employee will not in any way disparage RSI, including, but not limited to, its current and former owners, officers, directors and employees, or make or solicit any comments, statements, or the like to the media or to others that may be considered to be derogatory or detrimental to the good name or business reputation of RSI. In the event that Employee violates this provision, Employee acknowledges that RSI has the right to institute an action against Employee for any damages plus the reimbursement of attorneys' fees and costs incurred in connection with the enforcement of this provision. It is understood that the rest of this Separation Agreement and General Release would, nevertheless, remain in full force and effect.

9.      **Governing Law and Interpretation.** This Separation Agreement and General Release shall be governed and conformed in accordance with the laws of the state of Connecticut without regard to its conflict of laws provision. In the event of a breach of any provision of this Separation Agreement and General Release, any party may institute an action specifically to enforce any term or terms of this Separation Agreement and General Release and/or seek any damages for breach. Should any provision of this Separation Agreement and General Release be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Separation Agreement and General Release in full force and effect.

10.     **Nonadmission of Wrongdoing.** The Parties agree that neither this Separation Agreement and General Release nor the furnishing of the consideration for this Separation Agreement and General Release shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

11.     **Amendment.** This Separation Agreement and General Release may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Separation Agreement and General Release.

12.     **Entire Agreement.** This Separation Agreement and General Release sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties, except the Confidentiality Agreement executed by Employee and attached as Exhibit B. Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Separation Agreement and General Release, except for those set forth in this Separation Agreement and General Release.

**EMPLOYEE IS ADVISED THAT EMPLOYEE HAS UP TO TWENTY-ONE (21) CALENDAR DAYS TO CONSIDER THIS AGREEMENT AND GENERAL RELEASE. EMPLOYEE ALSO IS ADVISED TO CONSULT WITH AN ATTORNEY**

Accepted by: _____ Thomas Rettig            _____ RSI                          Page 4 of 5

PRIOR TO EMPLOYEE'S SIGNING OF THIS AGREEMENT AND GENERAL RELEASE.

EMPLOYEE MAY REVOKE THIS AGREEMENT AND GENERAL RELEASE FOR A PERIOD OF SEVEN (7) CALENDAR DAYS FOLLOWING THE DAY EMPLOYEE SIGNS THIS AGREEMENT AND GENERAL RELEASE. ANY REVOCATION WITHIN THIS PERIOD MUST BE SUBMITTED, IN WRITING, TO DERWIN D. SHELLEY AND STATE, "I HEREBY REVOKE MY ACCEPTANCE OF OUR AGREEMENT AND GENERAL RELEASE." THE REVOCATION MUST BE PERSONALLY DELIVERED TO NANCY A. CULLINEY OR HER DESIGNEE, OR MAILED TO NANCY A. CULLINEY, HR DIRECTOR, TUV RHEINLAND NORTH AMERICA HOLDING, INC., 1300 MASSACHUSETTS AVENUE, SUITE 103, BOXBOROUGH, MA 01719 AND POSTMARKED WITHIN SEVEN (7) CALENDAR DAYS AFTER EMPLOYEE SIGNS THIS AGREEMENT AND GENERAL RELEASE.

EMPLOYEE AGREES THAT ANY MODIFICATIONS, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT AND GENERAL RELEASE, DO NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL UP TO TWENTY-ONE (21) CALENDAR DAY CONSIDERATION PERIOD.

EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT AND GENERAL RELEASE INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.

The Parties knowingly and voluntarily sign this Separation Agreement and General Release as of the date(s) set forth below:

TUV Rheinland Rail Sciences, Inc.

By: _____
Name: Nancy A. Culliney

By: _____

Thomas Rettig

Title:  HR Director, TUV Rheinland North America Holding, Inc.

Date: _____

Date:  1/6/2012

**EXHIBIT A**

**REAFFIRMATION PROVISION**

Thomas Rettig ("Employee") hereby reaffirms the Agreement and General Release which he agreed to and entered into on _____, 201__ with TUV Rheinland Rail Sciences, Inc. ("RSI") and incorporates by reference all provisions therein.

Specifically, in exchange for the consideration set forth in the Separation Agreement and General Release Employee knowingly and voluntarily releases and forever discharges TUV Rheinland Rail Sciences, Inc., its parent corporations, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, including TUV Rheinland of North America, Inc. and TUV Rheinland North American Holding, Inc., and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and its employee benefit plans and programs and their administrators and fiduciaries (collectively referred to throughout the remainder of this Separation Agreement and General Release as "Releasees"), of and from any and all claims, known and unknown, asserted or unasserted, which Employee has or may have against Releasees as of the date of execution of this Separation Agreement and General Release, including, but not limited to, any alleged violation of:

- Title VII of the Civil Rights Act of 1964;
- The Civil Rights Act of 1991;
- Sections 1981 through 1988 of Title 42 of the United States Code;
- The Employee Retirement Income Security Act of 1974 (except for any vested benefits under any tax qualified benefit plan);
- The Immigration Reform and Control Act;
- The Americans with Disabilities Act of 1990;
- The Age Discrimination in Employment Act of 1967;
- The Worker Adjustment and Retraining Notification Act;
- The Fair Credit Reporting Act;
- The Family and Medical Leave Act;
- The Equal Pay Act;
- The National Labor Relations Act, to the extent permitted by law;
- The Older Workers Benefit Protection Act;
- The Consolidated Omnibus Budget Reconciliation Act, to the extent permitted by law;
- The Georgia AIDS Confidentiality Act, O.C.G.A. § 24-9-47;
- The Georgia Equal Pay Act, O.C.G.A. § 34-5-1 et seq.;
- The Georgia Age Discrimination in Employment Act, O.C.G.A. § 34-1-2;
- The Georgia Equal Employment for Persons with Disabilities Code, O.C.G.A. § 34-6A-1 et seq.;
- The Georgia Wage Payment and Work Hour Laws;
- The City of Atlanta Anti-Discrimination Ordinance, Part II, Chapter 94, Article 11, § 94-10, et seq.;
- any other federal, state or local law, rule, regulation, or ordinance;

Accepted by: _____ Thomas Rettig

- any public policy, contract, tort, or common law; or
- any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters.

If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which RSI or any other Releasee identified in this Separation Agreement and General Release is a party. If, without Employee's prior knowledge and consent, he is made a member of a class in any proceeding against RSI or any other Releasee, he agrees to opt out of the class at the first opportunity.

Employee affirms that Employee has not filed, caused to be filed, or presently is a party to any claim against RSI. Employee also affirms that Employee has been paid and/or has received all compensation, wages, bonuses, commissions, and/or benefits to which Employee may be entitled. Employee affirms that Employee has been granted any leave to which Employee was entitled under the Family and Medical Leave Act or related state or local leave or disability accommodation laws. Employee further affirms that Employee has no known workplace injuries or occupational diseases.

Employee also affirms that Employee has not divulged any proprietary or confidential information of RSI and will continue to maintain the confidentiality of such information consistent with RSI's policies and/or common law as well as the Confidentiality Agreement that Employee signed on April 23, 2011 which is attached as Exhibit B to the Separation Agreement and General Release.

Employee affirms that Employee has returned all of RSI's property, documents, and/or any confidential information in Employee's possession or control. Employee also affirms that Employee is in possession of all of Employee's property that Employee had at RSI's premises and that RSI is not in possession of any of Employee's property.

Failure to abide by the terms of this Reaffirmation Provision shall result in the termination of any and all payments to Employee pursuant to the Agreement and General Release. It is understood, however, that the rest of the Agreement and General Release would, nevertheless, remain in full force and effect.

IN WITNESS WHEREOF, Employee knowingly and voluntarily executed this Reaffirmation Provision as of the date set forth below:

_____

Thomas Rettig

_____

Date

Accepted by: ____ Thomas Rettig                                    Page 2 of 2

# EXHIBIT H

 **Fw: Summary of 1/16/2012 Meeting Correctiom of TC to TR**
Nancy Culliney to: Thomas Rettig                                    01/11/2012 04:47 PM
Cc: Sebastian Oertel

| History: | This message has been forwarded. |
|---|---|

Correction from TC to TR throughout...

Nancy A. Culliney
HR Director
TUV Rheinland North America Holding, Inc.
1300 Massachusetts Avenue, Suite 103
Boxborough, MA 01719
USA

Tel. + (978) 266-9500, x235
Fax + (978) 266-9992
email: nculliney@us.tuv.com
—— Forwarded by Nancy Culliney/US/TUV on 01/11/2012 04:40 PM ——

| From: | Nancy Culliney/US/TUV |
|---|---|
| To: | Thomas Rettig/US/TUV@TUV |
| Cc: | Sebastian Oertel/US/TUV@TUV |
| Date: | 01/11/2012 04:25 PM |
| Subject: | Re: Summary of 1/16/2012 Meeting |

Thomas,

Thomas I am sending you a list of modified points (in blue print) that reflect the substance of the meeting held on 1/6/2012.

1/6/2012 4p.m. EST

Thomas Rettig and Sebastian Oertel were at the RSI Atlanta location and NC was present via telephone.

- TR asked whether the telecon could be recorded. Due to NC feeling uncomfortable with it it was not recorded.

- TR asked whether the meeting could be recorded or would he need to take detailed notes. NC indicated that the conversation could not be recorded as conversations at TUV are not recorded (NC did not state that she felt uncomfortable). TR indicated that he would then need to take detailed notes. Points were repeated in order for him to take the detailed notes.

- SO advised TR on consulting with an attorney of my choosing

- SO indicated that the General Release cover letter TR was being given indicated that TR should review documents being given to him with an Attorney of his choice.

- TUV intends to terminate the position of VP Business Development at TUV-RSI. The proposed

last day of employment is April 6th, 2012.

- TUV is eliminating the position of VP Business Development at TUV-RSI. If TR accepts the agreement, the last day of employment will be 4/6/2012. If TR does not accept the agreement, the last day of employment will be 1/6/2012.

- SO provided to TR a written "Confidential Separation Agreement and General Release of All Claims" for review.

- TR has up to 21 days to respond

- TR has 21 days in which to consider, sign and return the "Confidential Separation Agreement and General Release of All Claims"

- According to SO the reason for the termination is the "financial performance of TUV-RSI in 2011"; thus Senior Management (i.e. CEO and Shareholders) have initiated a reorganization of TUV-RSI which the termination of my position is part of

- SO indicated that the reason for the position elimination is the "financial performance of TUV-RSI in 2011: thus Senior Mangement (i.e. CEO and Shareholders) have made the decision to eliminate the position of VP Business Development.

- At time of this telecon NC was not in a position to acknowledge that she is in possession of TUV's "Offer of Employment" to TR dated 3/29/2011 and signed by TR 4/23/2011. She will get back to TUV's files and provide such acknowledgement by email.

- NC indicated that she wanted to make sure the offer letter that she possessed had the same dates (NC has since checked and confirmed that the signed offer letter from Cindy Doyle is dated 3/29/2011 and was signed by TR on 4/23/2011). In order to move to other questions, she suggested that she would indicate by email that the offer of employment letter that she is in possession of is dated with those dates.

- TR asked where the Greencard application process is at this point. He was told the process is put on hold. At time of this telecon NC was not in a position to provide details on whether the Greencard process was initiated at all and if so, what the status of the process was at the time when TUV "put it on hold".

- NC did indicate that TR's Green card process was initiated, and that it had been put on hold at the time the decision was made to eliminate the position of VP Business Development. NC indicated that she was unaware of the status of the process at the time that TUV put it on hold.

- NC stated that in order for her to provide detailed information about the Greencard application process and it's status TR is to put in a formal request to her.

- NC did not commit to providing the detailed information, but she stated that TR should provide a formal written request identifying what detailed information he was asking for.

- Upon asking why the "employment confirmation letter" for TR's step daughter's college was not issued at time of the request (see TR email to NC 11/21/2011) no answer was provided.

- NC indicated that this request was made in conjunction with TR's request for a letter confirming

that legally permissible steps have been initiated by TUV to obtain permanent residence for the Rettig family. NC's understanding was that both letters needed to be provided in order to result in a tuition discount for TRs daughter.

- TR is to provide suitable confirmation of whether the two letters for the college requested in November 2011 (above "employment confirmation letter" and another letter initially sent to TUV's immigration lawyer Hilde Holland "confirming that legally permissible steps have been initiated by TUV to obtain permanent residence for the Rettig family) would have been sufficient for the college to finalize the waiver on the out-of-state tuition.

- NC had asked TR to provide confirmation that the one letter of employment verification from TUV requested would have resulted in the tuition discount. NC's understanding was that both letters needed to be provided to the school to result in the tuition discount. NC informed TR that the Immigration Attorney was unable to provide the other letter stating that the legally permissible steps have been initiated by TUV to obtain permanent residence for the Rettig family, as the Green card process was not being continued. The Immigration Attorney could not provide this letter based upon the decision to eliminate the position of VP Business Development.

- TUV acknowledged they are available to receive and evaluate a response from TR including counter proposal.

Nancy A. Culliney
HR Director
TUV Rheinland North America Holding, Inc.
1300 Massachusetts Avenue, Suite 103
Boxborough, MA 01719
USA

Tel. + (978) 266-9500, x235
Fax + (978) 266-9992
email: nculliney@us.tuv.com

| Thomas Rettig | Nancy,Sebastian, This is just to summarize our... | 01/06/2012 05:34:39 PM |

| | |
|---|---|
| From: | Thomas Rettig/US/TUV |
| To: | Sebastian Oertel/US/TUV@TUV, Nancy Culliney/US/TUV@TUV |
| Date: | 01/06/2012 05:34 PM |
| Subject: | Summary of today's HR telecon |

Nancy,Sebastian,

This is just to summarize our conversation today:

- TR asked whether the telecon could be recorded. Due to NC feeling uncomfortable with it it was not recorded.
- SO advised TR on consulting with an attorney of my choosing
- TUV intends to terminate the position of VP Business Development at TUV-RSI. The proposed last day of employment is April 6th, 2012.
- SO provided to TR a written "Confidential Separation Agreement and General Release of All Claims" for review.
- TR has up to 21 days to respond.
- According to SO the reason for the termination is the "financial performance of TUV-RSI in 2011", thus Senior Management (i.e. CEO and Shareholders) have initiated a reorganization of TUV-RSI which

the termination of my position is part of
- At time of this telecon NC was not in a position to acknowledge that she is in possession of TUV's "Offer of Employment" to TR dated 3/29/2011 and signed by TR 4/23/2011. She will get back to TUV's files and provide such acknowledgement by email.
- TR asked where the Greencard application process is at this point. He was told the process is put on hold. At time of this telecon NC was not in a position to provide details on whether the Greencard process was initiated at all and if so, what the status of the process was at the time when TUV "put it on hold".
- NC stated that in order for her to provide detailed information about the Greencard application process and it's status TR is to put in a formal request to her.
- Upon asking why the "employment confirmation letter" for TR's step daughter's college was not issued at time of the request (see TR email to NC 11/21/2011) no answer was provided.
- TR is to provide suitable confirmation of whether the two letters for the college requested in November 2011 (above "employment confirmation letter" and another letter initially sent to TUV's immigration lawyer Hilde Holland "confirming that legally permissible steps have been initiated by TUV to obtain permanent residence for the Rettig family) would have been sufficient for the college to finalize the waiver on the out-of-state tuition.
- TUV acknowledged they are available to receive and evaluate a response from TR including counter proposal.

Date/Time: Jan 6, 2012, appr. 4:20 pm
Participants: Nancy Culliney (NC), Sebastian Oertel (SO), Thomas Rettig (TR)

Regards,
Thomas

TUV Rheinland Rail Sciences, Inc.
411 N Clarendon Ave
Scottdale, GA 30079-0885

Thomas Rettig
Vice President Business Development
Tel    +1 (404) 294-5300
Cell   +1 (203) 278-4775
Fax    +1 (404) 294-5423
Email  trettig@us.tuv.com
http://www.tuv.com

In the event that this email contains any proposal, or the acceptance of any proposal, by TUV Rheinland Rail Sciences, Inc. to provide any testing, consulting, or other professional services, please be advised that such proposal or acceptance is made subject to the TUV Rheinland Rail Sciences, Inc. General Terms and Conditions which are incorporated herein as though fully set forth in this email. You are hereby agreeing to accept each and every one of the TUV Rheinland Rail Sciences, Inc. General Terms and Conditions. To obtain a copy of the General Terms and Conditions, please contact the sender immediately via email, or call the office at 404.294.5300, or visit our website, www.tuv.com.

# EXHIBIT I

RE: Please help again with letter for College
Hilde Holland
to:
Thomas Rettig
12/01/2011 07:20 PM
Show Details

Dear Mr. Rettig,

Please contact Nancy Culliney in connection with this inquiry.

Kind regards,

HILDE HOLLAND | WUERSCH & GERING LLP
100 Wall Street, 21st FL | New York, New York 10005
212-509-4715 (direct) | 212-509-5050 (firm) | 212-509-9559 (fax)
hilde.holland@wg-law.com | www.wg-law.com

This message and any attachments hereto contain confidential information and information which may be subject to the attorney-client privilege. It is intended for the individual or entity named above. If you are not the intended recipient, please do not read, copy, use or disclose this communication to others; also please notify the sender by replying to this message, and then delete it from your system. Thank you.

Any advice in this email concerning a federal tax issue is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding any tax penalties that can be imposed by the Internal Revenue Service, or for promoting, marketing or recommending any tax-related matters addressed herein.

From: Thomas Rettig [mailto:TRettig@us.tuv.com]
Sent: Thursday, December 01, 2011 10:18 AM
To: Hilde Holland
Subject: Fw: Please help again with letter for College

Hello Fran Holland,

I am aware you are probably still busy with the H1B work. But I was hoping you could help me with this letter here some time soon. If I miss out on the college deadline for submittal of the letter it's going to cost me a lot. Greatly appreciate it. Thanks!.
Best Regards,
Thomas Rettig

TUV Rheinland Rail Sciences, Inc.
411 N Clarendon Ave
Scottdale, GA 30079-0885

Thomas Rettig
Vice President Business Development
Tel      +1 (404) 294-5300
Cell     +1 (203) 278-4775
Fax      +1 (404) 294-5423
Email  trettig@us.tuv.com
http://www.tuv.com

In the event that this email contains any proposal, or the acceptance of any proposal, by TUV Rheinland Rail Sciences, Inc. to provide any testing, consulting, or other professional services, please be advised that such proposal or acceptance is made subject to the TUV Rheinland Rail Sciences, Inc. General Terms and Conditions which are incorporated herein as though fully set forth in this email. You are hereby agreeing to accept each and every one of the TUV Rheinland Rail Sciences, Inc. General Terms and Conditions. To obtain a copy of the General Terms and Conditions, please contact the sender immediately via email, or call the office at 404.294.5300, or visit our website, www.tuv.com.
—— Forwarded by Thomas Rettig/US/TUV on 12/01/2011 10:13 AM ——

From:   Thomas Rettig/US/TUV

To:       Hilde Holland <hholland@wg-law.com>
Date:     11/21/2011 08:52 AM
Subject:  Please help again with letter for College

Good Morning Frau Holland,

A while ago you helped out with a letter confirming to my step daughter's college that we are actively taking steps toward obtaining permanent residency (I have the letter attached here again for your reference). The college is now asking for an updated attorney letter before confirming Olivia's tuition for the next semester again. Would you please be so kind and help us out again? Greatly appreciate it.

Apart from the letter is there also an update available for me on where we stand with the PERM application process?

Thanks a lot!
Best Regards,
Thomas

TUV Rheinland Rail Sciences, Inc.
411 N Clarendon Ave
Scottdale, GA 30079-0885

Thomas Rettig
Vice President Business Development
Tel     +1 (404) 294-5300
Cell    +1 (203) 278-4775
Fax     +1 (404) 294-5423
Email   trettig@us.tuv.com
http://www.tuv.com

In the event that this email contains any proposal, or the acceptance of any proposal, by TUV Rheinland Rail Sciences, Inc. to provide any testing, consulting, or other professional services, please be advised that such proposal or acceptance is made subject to the TUV Rheinland Rail Sciences, Inc. General Terms and Conditions which are incorporated herein as though fully set forth in this email. You are hereby agreeing to accept each and every one of the TUV Rheinland Rail Sciences, Inc. General Terms and Conditions. To obtain a copy of the General Terms and Conditions, please contact the sender immediately via email, or call the office at 404.294.5300, or visit our website, www.tuv.com.

Please be advised that TEST RESULTS, TEST REPORTS, CERTIFICATIONS, TEST MARKS and any other STATEMENTS regarding a work order are as a matter of principle not issued via e-mail! Any communications via e-mail regarding such matters are for informational purposes only, shall not be relied on, and do not replace or anticipate the formal notification regarding certification, test marks, test results or other decisions in accordance with our Testing and Certification Regulations.

IN THE SUPERIOR COURT OF DEKALB COUNTY

STATE OF GEORGIA   **FILED**

| | |
|---|---|
| THOMAS RETTIG, KERSTIN RETTIG and OLIVIA ANGELINA ECKHARDT, | 2012 FEB 15 P 2:19 |
| Plaintiffs, | Civil Action CLERK OF SUPERIOR COURT File No.: DEKALB COUNTY GA 12A5-10 |
| v. | |
| TUV RHEINLAND RAIL SCIENCES, INC., TUV RHEINLAND NORTH AMERICA HOLDING, INC. and TUV RHEINLAND OF NORTH AMERICA, INC., | |
| Defendants. | |

## ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER AND RULE NISI

Desiring to maintain the status quo until the defendants herein have had an opportunity to be heard on the plaintiffs' Motion for a Temporary Restraining Order and Interlocutory Injunction, the court hereby grants a temporary restraining order prohibiting TUV from terminating the employment of Thomas Rettig. This Restraining Order shall remain in effect for thirty (30) days or until the court has held a hearing and ruled on the plaintiffs' Motion for Interlocutory Injunction, whichever comes first.

Let all parties appear before this Court on the _12th_ day of _March_, 2012 at _9_:00 _a._m. in Courtroom _5C_ of the DeKalb County Superior Court, for a hearing on this Motion.

Let all parties be served with a copy of this Rule Nisi by Plaintiffs' counsel faxing and e-mailing a copy of it to the respective parties and attorneys of record.

SO ORDERED this ___15th___ day of ___FEBRUARY___, 2012.

BY: _____

Judge, Superior Court of DeKalb County

Doc ID#1681197.doc

«Matter Matter Description (First Line)» / CAFN: «Court Information Civil Action File No: (Once) (Ask) (Prompt "Please select")»
RULE NISI

- 2 -

IN THE SUPERIOR COURT OF DEKALB COUNTY

STATE OF GEORGIA

THOMAS RETTIG, KERSTIN RETTIG
and OLIVIA ANGELINA ECKHARDT,

        Plaintiffs,

v.

TUV RHEINLAND RAIL SCIENCES,
INC., TUV RHEINLAND NORTH
AMERICA HOLDING, INC. and TUV
RHEINLAND OF NORTH AMERICA,
INC.,

        Defendants.

Civil Action
File No.: 12CV2652510



---

## PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND FOR INTERLOCUTORY INJUNCTION

COME NOW, Plaintiffs Thomas Rettig, Kerstin Rettig, and Olivia Angelina Eckhardt, and pursuant to O.C.G.A. §§ 9-5-1, 9-5-8 and 9-11-65, and file this Motion for a Temporary Restraining Order and for Interlocutory Injunction against Defendants. Plaintiffs respectfully request the court immediately enjoin the defendants from the following action(s):

1. From terminating Mr. Rettig in violation of his employment contract and/or other agreement(s) made between Mr. Rettig and TUV Rheinland Rail Sciences, Inc. ("TUV/RSI"), TUV Rheinland North America Holding, Inc. ("TUV Holding"), and TUV Rheinland of North America, Inc. ("TUV Rheinland") (collectively "TUV").

As set forth in the Brief in Support of this Motion filed contemporaneously herewith, because of the unique immigration issues at play in this case, if TUV terminates

Thomas Rettig before either the Green Card process has been completed and/or the issues in this case have been resolved by the Court, the plaintiffs will suffer immediate and irreparable harm for which there is no adequate remedy at law. Therefore, the Court should enter an Order enjoining TUV from terminating Mr. Rettig and order TUV to maintain the status quo until these issues can be fully resolved.

WHEREFORE, for the reasons set forth herein and in the supporting Brief, the plaintiffs respectfully request the court grant their Motion for a Temporary Restraining Order and for Interlocutory Injunction.

This 14th day of February, 2012.

> GOODMAN MCGUFFEY LINDSEY & JOHNSON, LLP
> Attorneys for Plaintiffs Thomas Rettig,
> Kerstin Rettig and Olivia Angelina Eckhardt

By:  *Fred Rhee*

> FRED R. GREEN
> GA State Bar No. 306845
> fgreen@gmlj.com
> JUDY FARRINGTON AUST
> GA State Bar No. 028590
> fgreen@gmlj.com
>
> 3340 Peachtree Road NE, Suite 2100
> Atlanta, GA 30326-1084
> Phone: (404) 264-1500
> Fax:  (404) 264-1737

IN THE SUPERIOR COURT OF DEKALB COUNTY

STATE OF GEORGIA

THOMAS RETTIG, KERSTIN RETTIG
and OLIVIA ANGELINA ECKHARDT,

        Plaintiffs,

v.

TUV RHEINLAND RAIL SCIENCES,
INC., TUV RHEINLAND NORTH
AMERICA HOLDING, INC. and TUV
RHEINLAND OF NORTH AMERICA,
INC.,

        Defendants.

Civil Action
File No.:



## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER AND FOR INTERLOCUTORY INJUNCTION

COME NOW, Plaintiffs Thomas Rettig, Kerstin Rettig, and Olivia Angelina Eckhardt, and pursuant to O.C.G.A. §§ 9-5-1, 9-5-8 and 9-11-65, file this Brief in Support of their Motion for a Temporary Restraining Order and for Interlocutory Injunction, respectfully showing this Court as follows:

### STATEMENT OF FACTS

Plaintiffs are German nationals. They moved to the United States in 2006 and settled in Connecticut when Plaintiff Thomas Rettig accepted a job with Defendant TUV Rheinland of North America, Inc. ("TUV Rheinland"). TUV Rheinland is a member of the German TUV Rheinland Group operating in the United States.

*Relocation to Georgia and Employment Contract*

In July 2010, TUV Rheinland an American company, Rail Sciences, Inc. and changed the name to TUV Rheinland Rail Sciences, Inc. ("TUV/RSI").[1] The various TUV entities, TUV Rheinland, TUV Holding and TUV/RSI are collectively referred to herein as "TUV." In preparing for the acquisition, TUV approached Thomas Rettig in early 2010 about its desire to transfer him to Scottdale, Georgia to assume the position of Vice President of Business Development at TUV/RSI. As a condition of Mr. Rettig's agreement to relocate to Georgia and assume a position with TUV/RSI, to protect his family, including his now nineteen (19) year old stepdaughter, and make sure they would all be able to legally live and work in the United States, he requested TUV sponsor him in the acquisition of a Green Card for himself **and** his family. TUV agreed, and in turn, required that Mr. Rettig successfully attain a non-immigrant work visa, accept the position and relocate to Georgia.

In correspondence dated July 19, 2010, Cindy Doyle, the then HR Director of TUV, acknowledged that Mr. Rettig had "followed the procedure as instructed by HR" and she later confirmed by letter of July 23, 2010 that the contingency for his employment contract would be satisfied upon his successful attainment of his E-2 visa. (*See* Exhibits I and A) Relying upon the assurance of TUV that the appropriate steps would be taken to obtain Green Cards for Thomas Rettig, his wife and daughter, in July, 2010 Mr. Rettig moved his family from Connecticut to Georgia. Although working for TUV/RSI, Mr. Rettig remained an employee of TUV until he could get his E-2 visa which was approved and issued on December 7, 2010.

---

[1] Upon information and belief, TUV Rheinland Rail Sciences, Inc. is a wholly-owned subsidiary of TUV Rheinland North America Holding, Inc. ("TUV Holding").

On or about March 29, 2011, TUV sent a formal Offer of Employment to Thomas Rettig to become an employee of TUV/RSI, which he signed on April 23, 2011. In that Offer of Employment letter, TUV stated, "As part of this transfer it was agreed that the company would sponsor you and your family *through* the Green Card process." (Emphasis added) (*See* Exhibit B)  That letter followed Cindy Doyle's letter of July 23, 2010, which evidenced the intent of TUV and Mr. Rettig to enter into an employment contract.  (*See* Exhibit A)

*Green Card Application*

From the documents Mr. Rettig has in his file, it does not appear that TUV undertook many, if any, steps toward shepherding Mr. Rettig and his family through the Green Card process. On February 4, 2011, attorney Hilde Holland, who was hired by TUV to represent both Thomas Rettig and TUV in the Green Card application process (called a PERM application),[2] sent an email to both TUV and Thomas Rettig asking for documents she needed to complete the application for TUV "on behalf of Mr. Rettig." (*See* Exhibit C). Mr. Rettig responded on April 2, 2011. (*See* Exhibit D).

On May 13, 2011, Thomas Rettig inquired with Ms. Holland about the status of the PERM application.  (*See* Exhibit E).  Ms. Holland responded directly to Mr. Rettig the same day and said, "We have analyzed the position and your credentials and will file the requisite prevailing wage request with DOL next week. This process takes 4-6 weeks, and we will then post the requisite ad postings. I keep you posted." Id.

Ms. Holland wrote a letter dated July 11, 2011 in which she averred that TUV was "in the process" of applying for Alien Labor Certification *on behalf of Mr. Rettig* "as part of

_____

[2] Unlike in most attorney-client relationships where one attorney represents one client, in the immigration arena, unless the attorney expressly indicates otherwise, it is presumed that an attorney who is pursuing a Green Card for a corporate employee has a dual representation. He represents both the employer/petitioner and foreign employee/beneficiary.

TUV's permanent residency application for Mr. Rettig and his family. . . ." (Emphasis added) (*See* Exhibit F)  Ms. Holland never provided Mr. Rettig copies of the prevailing wage request, and upon information and belief, the position was never advertised.  Ms. Holland has also not provided Mr. Rettig copies of the PERM application for his signature. In other words, it appears Ms. Holland may have misrepresented what actions, if any, TUV had undertaken in the Green Card application process for Mr. Rettig.

Mr. Rettig contacted Ms. Holland several times by phone and email and finally reached her in November 2011.  Ms. Holland told Mr. Rettig on the phone and in a December 1, 2011 email that she could no longer speak with him and that he would have to speak with the HR Director at TUV. (*See* Exhibit J)  Mr. Rettig repeatedly tried speaking with Ms. Culliney, the current HR Director.  She finally told Mr. Rettig they would meet with him on January 6, 2012.  Mr. Rettig met with two representatives of TUV, Sebastian Oertel and Nancy Culliney, on January 6, 2012.  Mr. Oertel was present with Mr. Rettig, and Ms. Culliney joined by telephone.  During that meeting, TUV indicated its intention to terminate Mr. Rettig, and presented him with a proposed Separation Agreement giving him three weeks notice to decide whether or not to sign the Agreement. (*See* Exhibit G)

When Thomas Rettig asked about the status of his Green Card application during the January 6th meeting, Ms. Culliney told Mr. Rettig that his Green Card application had been "put on hold" by TUV, a fact confirmed by Ms. Culliney in her January 11, 2012 email to Mr. Rettig. (*See* Exhibit H)

*Impact on Olivia Eckhardt*

After her graduation from high school in May 2011, Thomas and Kerstin Rettig's daughter, Olivia Angelina Eckhardt, enrolled in Georgia Perimeter College.  Thomas Rettig had the reasonable expectation that TUV would provide the necessary documentation to

enable her to receive tuition benefits available to Georgia residents. That expectation was based upon TUV's express agreement to provide such documentation.

TUV provided that documentation before the Fall 2011 semester, (*See* Exhibit F), but when Mr. Rettig requested the same for the Winter 2012 semester, TUV refused to provide the necessary documentation, even though Mr. Rettig was, and as of now remains, an employee of TUV/RSL.

Not only has TUV failed to provide the information needed for Olivia Eckhardt to receive in-state tuition at Georgia Perimeter College, but it appears TUV has completely failed to take the necessary steps to proceed with Mr. Rettig's application for a Green Card. As a consequence, Mr. Rettig is at risk of substantial monetary damage, as well as the loss of his E-2 Visa, his ability to find alternative employment, and to work legally in the United States. If he cannot obtain a Green Card before May 2013 when Olivia Eckhardt turns twenty-one (21), she will lose her ability to "piggy back" on her father's Green Card application and will be forced to leave the United States. The damages she will suffer as a result will be substantial. Those are separate and distinct from the damages Mr. and Mrs. Rettig will suffer.

## ARGUMENT AND CITATION OF AUTHORITY

An injunction may be ordered to restrain the actions of one party, which are tortious or are contrary to equity and good conscience, and for which there is otherwise no adequate remedy at law. O.C.G.A. § 9-5-1. An interlocutory injunction is used to preserve the status quo of the parties, pending the final outcome of the case. *See* Kinard v. Ryman Farm HomeOwners Ass'n, Inc., 278 Ga. 149, 598 S.E.2d 479 (2004); State Farm Mut. Auto. Ins. Co. v. Mabry, 274 Ga. 498, 509 (2001). In determining whether to grant interlocutory relief, courts balance the relative equities of the parties, and grant the

injunction only if it appears the equities favor the party seeking the injunction. Lee v. Envtl. Pest & Termite Control, Inc., 271 Ga. 371,373 (1999).

In analyzing motions for equitable relief, the Georgia Supreme Court has held that "[t]here should be a balance of conveniences in such cases, and a consideration of whether greater harm might be done by refusing than by granting the injunction." Ward v. Nat'l Dairy Prods. Corp., 224 Ga. 241 (1968). Georgia Courts have routinely held that to grant the relief requested herein, there must be clear evidence of immediate and irreparable injury, loss or damage to the party seeking the injunction, and there is a substantial likelihood that the party seeking the injunction will prevail on the underlying merits. *See*, Kinard v. Ryman Farm HomeOwners Ass'n, Inc., 278 Ga. 149, 598 S.E. 2d 479 (2004); State Farm Mut. Auto Ins. Co. v. Mabry, 274 Ga. 498, 509 (2001). Finally, Georgia Courts have held that the injury, if any, suffered by the defendant must not outweigh the damage that will be suffered by the party seeking the injunction should the relief sought not be granted. Id.

Paramount in balancing the equities between the parties is the question of the merit of the underlying claims or defenses of the party seeking the injunction. Courts are, therefore, justified in granting an interlocutory injunction when the party seeking the injunction has a high probability of success on the underlying merits of the action. *See*, Lee v. Envtl Pest & Termite Control, Inc., 271 Ga. 371, 373 (1999); Hallman v. Emory Univ., 225 Ga. App. 247, 438 S.E. 2d 362 (1997) ("The grant of an interlocutory injunction by the trial court was a determination that there was a substantial likelihood of success on the merits upon the trial of a case.")

As demonstrated in greater detail below, all elements required exist in the present case. First, there is clear evidence of immediate and irreparable injury, loss or damage to

the plaintiffs if TUV terminates Thomas Rettig in violation of his employment agreement. Second, there is a substantial likelihood that the plaintiffs will prevail on the merits of at least one, if not all of their claims because TUV and Mr. Rettig entered into a valid and binding contract, which TUV, by its actions over the past year and recently, has admittedly breached. Third, if any, the injury suffered by the defendants does not outweigh the damage that will be suffered by the plaintiffs should the injunctive relief sought not be granted.

*I. Clear Evidence of Immediate and Irreparable Injury.*

As set forth above, Thomas Rettig is working for TUV/RSI on an E-2 non-immigrant visa which he was able to obtain when he transferred his employment from TUV Rheinland to TUV/RSI. TUV/RSI sponsored Mr. Rettig and assisted him in obtaining the E-2 visa in December 2010.

Although he had been working for TUV/RSI but remained on the payroll of TUV Rheinland pending approval of his E-2 visa, it was shortly thereafter that Mr. Rettig formally transferred his employment to TUV/RSI. He did so only on the representations made by TUV in its March 29, 2011 Offer of Employment which said, "As part of this transfer it was agreed that the company would sponsor you and your family *through* the Green Card process." (Emphasis added) (*See* Exhibit B) That letter followed Cindy Doyle's letter of July 23, 2010, which evidenced the intent of TUV and Mr. Rettig to enter into an employment contract. (*See* Exhibit A)

Because of his employment status, if TUV were to terminate Mr. Rettig, he and his family would no longer be legally residing in the United States. After living in the United States for almost six years and setting down roots here – including the enrollment of Olivia Eckhardt in college – they would be forced to leave their home, sell their cars, Olivia

-7-

Eckhardt will be forced to withdraw from college, etc. and immediately return to Germany. If they wanted to return to the United States, Mr. or Mrs. Rettig would have to find work with a company that wanted to place them in the United States, would be willing to sponsor first their application for non-immigrant visa, and also sponsor them through the Green Card application process.[3]

When Mr. Rettig agreed to relocate with his family to Georgia, and TUV agreed to sponsor Mr. Rettig and his family *through* the Green Card process, Mr. Rettig knew that if he and TUV parted ways after he and his family had obtained their Green Cards, they would not only be able to remain in the United States, but all three plaintiffs would be allowed to find work with any company willing to hire them.

If TUV terminates Mr. Rettig before completing the Green Card process, while money damages may be able to compensate the plaintiffs, money damages can never make them whole. Mr. Rettig and his family have laid down roots and planned to remain in the United States and in Georgia. With Green Cards, they would have been able to live and work here. Olivia Eckhardt has enrolled in college. Having graduated an American middle and high school, she would not be qualified to attend college in the German education system, which will put her at a tremendous educational and professional disadvantage. There is no remedy at law to compensate for such harm.

Having followed all the legal steps to come to the United States, and having worked to ensure they will be able to remain in the United States by making an agreement with TUV to sponsor them through the Green Card process, if they are forced to leave this country because TUV breached its agreement with Mr. Rettig, the evidence of the

---

[3] If that does not occur within the next couple of months, at the latest, Olivia Eckhardt will not be able to be a part of her parents' petition because she will turn 21 before the process, which usually takes well in excess of a year after the E-2 non-immigrant visa is obtained, runs its course.

immediate and irreparable injury, loss or damage to the plaintiffs, who come to this Court seeking an injunction, is patently clear.

II. *Substantial Likelihood That The Plaintiffs Will Prevail On The Underlying Merits.*

As you can see from the attached documents, specifically the March 29, 2011 Offer of Employment letter, and the January 11, 2012 email from Nancy Culliney of TUV to Mr. Rettig, both of which are attached hereto as Exhibits B and H, TUV entered into a binding contractual agreement with Mr. Rettig to sponsor him and his family through the Green Card process. Although TUV did not indicate to Mr. Rettig when, it is undisputed TUV admitted it suspended the Green Card application process. The only way Mr. Rettig and his family can get their Green Cards is if TUV goes through with the Green Card application process which TUV is contractually bound to do. If TUV terminates Mr. Rettig, his E-2 non-immigrant visa status will immediately cease, and he will no longer legally be in the United States.

In other words, if TUV terminates Mr. Rettig, it will make it impossible for TUV to uphold its end of the agreement it made in the Offer of Employment which Mr. Rettig accepted. Under those undisputed facts, it is unclear how the plaintiffs would not prevail on at least one, if not several, of the allegations contained in the Complaint they filed contemporaneously herewith.

III. *Any Injury Suffered By The Defendants Does Not Outweigh The Damage That Will Be Suffered By The Plaintiffs If The Injunctive Relief Sought Is Not Granted.*

Throughout this Brief, Plaintiffs have set forth the immediate and irreparable harm they will suffer if TUV terminates Mr. Rettig's employment. If this court were to grant a temporary restraining order and/or interlocutory injunction, there would be no harm to TUV. As set forth in Nancy Culliney's January 11, 2012 email to Mr. Rettig, the decision to

terminate Mr. Rettig was not due to any issues with job performance. On the contrary, the decision to terminate him was "the financial performance of TUV-RSI in 2011."

If the court enjoins TUV from terminating Mr. Rettig and maintains the status quo, either until TUV voluntarily completes the Green Card application process on behalf of Mr. Rettig and his family or until the claims in the Complaint filed herewith have been adjudicated, there will be no harm to TUV. Mr. Rettig will continue to perform his job duties as before, and TUV will continue to compensate him for the job he does for the company. Maintaining the status quo until these issues are fully resolved by the court will cause no harm to TUV. If it were to cause any harm, that harm would pale in comparison to what the plaintiffs will face if TUV terminates Mr. Rettig.

## CONCLUSION

The plaintiffs seek a temporary restraining order and interlocutory injunction to prevent them from suffering the immediate and irreparable harm they will suffer if TUV unlawfully terminates Mr. Rettig's employment. TUV entered into a valid and binding employment agreement with Thomas Rettig. Even if the court were to ultimately determine that the agreement is not a binding "employment" contract, which would mean that Mr. Rettig is an at will employee, TUV and Mr. Rettig entered into a binding agreement which required TUV to sponsor Mr. Rettig and his family *through* the Green Card process. If TUV terminates Mr. Rettig that can never happen.

WHEREFORE the reasons set forth herein, Plaintiffs Thomas Rettig, Kerstin Rettig and Olivia Angelina Eckhardt respectfully request the Court grant their Motion for a Temporary Restraining Order and Interlocutory Injunction, enjoin TUV from terminating Mr. Rettig until the Green Card process has been completed, or in the alternative, to maintain the status quo until the issues in the lawsuit filed herewith have been resolved.

This 14th day of February, 2012.

GOODMAN MCGUFFEY LINDSEY & JOHNSON, LLP
Attorneys for Plaintiffs Thomas Rettig,
Kerstin Rettig and Olivia Angelina Eckhardt

By:  *Fred Rha*

FRED R. GREEN
GA State Bar No.  306845
fgreen@gmlj.com
JUDY FARRINGTON AUST
GA State Bar No.  028590
fgreen@gmlj.com

3340 Peachtree Road NE, Suite 2100
Atlanta, GA 30326-1084
Phone:  (404) 264-1500
Fax:   (404) 264-1737

# EXHIBIT A



July 23, 2010

Mr. Thomas Rettig
11 South Lake Shore Drive
Brookfield, CT 06804

Re:   <u>Transfer of Employment from TUV Rheinland of North America, Inc., to TUV
Rheinland Rail Sciences, Inc.</u>

Dear Thomas:

As part of the acquisition process, TUV Rheinland Rail Sciences, Inc. ("TUVRSI") is in
the process of creating your contract of employment as well as other new hire documents
(handbook, etc).  Your contract will be contingent upon successful attainment of a non-
immigrant work visa.  Once this non-immigrant visa is approved and attained TUV
Rheinland Rail Sciences, Inc will start the process of attaining a Green Card for you and
your family.  Since the non-immigrant visa must be obtained before you start your
employment with TUV Rheinland Rail Sciences, Inc., you will remain on the TUV
Rheinland of North America Inc.'s payroll, benefits, and 401k plan.  Once the non-
immigrant visa is obtained you will be considered an employee of TUV Rheinland Rail
Sciences, Inc.

As part of the above mentioned this letter will serve as notice of your transfer of
employment from TUV Rheinland of North America, Inc to TUV Rheinland Rail
Sciences, Inc., in the position of Vice President of Business Development with the new
salary of $100,000.00.

Please feel free to contact me with any questions or concerns regarding this matter.

Sincerely,

Cindy Doyle
Human Resources Manager
TUV Rheinland of North America, Inc.

# EXHIBIT B

*Sent 4/25/2011*

**Human Resources**

△ **TÜVRheinland®**
Precisely Right.

### OFFER OF EMPLOYMENT

Mr. Thomas Rettig
2989 Commonwealth Circle
Alpharetta, GA 30004

Cindy Doyle
cdoyle@us.tuv.com

March 29, 2011

Dear Thomas:

As previously discussed, due to the acquisition of TUV Rheinland Rail Services, Inc. Your employment has been transferred from TUV Rheinland of North America, Inc. to TUV Rheinland Rail Services Inc., effective August 1, 2010. Your new title is Vice President of Business Development- Rail Services. You will be working out of the Scottdale, GA office, reporting to Gary Wolf- President. Your annual Salary will be $100,000.00 and is being paid semi-monthly at $4,166.66.

In the enclosed binder, you will find the Employee Handbook, Confidentiality Agreement, etc. Please look through this binder to acclimate your self to your new position as well as the policies and procedures of TUV Rhineland Rail Sciences, Inc. As a former employee of TUV Rheinland of North America, Inc. the following will be grandfathered:

- 21 vacation days per year
- Hallesche Insurance Plan Coverage (plan premium rates as well as availability, is subject to change at the companies discretion)

Please see attached Employee Handbook for more information regarding Holidays, Sick time, etc. As an employee of TUV Rheinland Rail Sciences, Inc you are eligible to participate in the Benefit Plans as well as the Simple IRA Plan, offered by the company. If you decide to enroll in these plans, please contact me for further information. As you are no longer employed through TUV Rheinland of North America, Inc, your participation in the companies 401K Plan will no longer be possible. Please contact Susan Robidoux, HR Generalist at TUV Rheinland of North America, Inc. to discuss proper documentation and processing.

*See Cindy's 4/20/4 email*

As part of this transfer it was agreed that the company would sponsor you and your family through the Green Card process.

TUV Rheinland
of North America, Inc.
North American Headquarters

12 Commerce Road
Newtown, CT 06470

Tel        203-426-0888
Fax        203-438-4009
Toll Free  TUV-RHEINLAND
Mail       info@tuv.com
Web        www.tuv.com

Member of
TÜV Rheinland Group



TÜVRheinland®
Precisely Right.

2

I asked that you read thought all the enclosed information as well as sign and return the necessary documentation, and return to me at your earliest convenience.

If you have any questions regarding the above mentioned, please feel free to contact me at 203-426-0888 x156 or via email at cdoyle@us.tuv.com.

Sincerely,

Cindy Doyle
Human Resources Shared Service Manager
TUV Rheinland of North America, Inc

**ACCEPTANCE OF EMPLOYMENT OFFER**

Thomas Rettig                                    4 / 23 / 2011
                                                    Date

# EXHIBIT C



"Hilde Holland"
<hholland@wg-law.com
>

02/04/2011 10:21 PM

To   "Cindy Doyle" <CDoyle@us.tuv.com>

cc   <sschmitt@us.tuv.com>, "Thomas Rettig"
<TRettig@us.tuv.com>

bcc

Subject   FW: RETTIG, Thomas/TUV Rheinland Rail Sciences, Inc. -
PERM Application; Request for Info

Hi Cindy,

In order for us to complete the requisite forms for TUV Rheinland Rail Sciences, Inc.'s PERM
application on behalf of Mr. Thomas Rettig, we would like to obtain the following initial items as
soon as possible:

I.  **From TUV Rheinland Rail Sciences, Inc.:**

1.  Confirmation of Mr. Rettig's duties in the permanent position of Vice President, Business
Development (see attached sheet; please review for accuracy and amend as necessary);

2.  Minimum academic requirements (not preferences) for the prospective permanent position
(please indicate type of degree [e.g., Bachelor's, Master's, etc.] and field of study);

3.  Minimum years of employment experience required (not preferred) for the prospective
permanent position;

4.  Job title of the individual to whom Mr. Rettig will report;

5.  Number and type of workers (directly and/or indirectly) that Mr. Rettig will supervise as Vice
President, Business Development (please indicate the number of supervisors and staff
separately);

6.  Listing of any required skills, licenses, specialized knowledge, languages (including computer
languages), programs, etc.;

7.  Mr. Rettig's prospective annual salary;

8.  Number of hours Mr. Rettig will work per week;

9.  Mr. Rettig's hourly work schedule (e.g., from 9:00 am to 5:00 pm);

10. Please indicate whether travel will be required, and if so, explain any travel requirements and
locations (city, state);

11. Current number of employees;

12. Complete address of the permanent job site; and

13. Confirmation that TUV Rheinland Rail Sciences, Inc. did not experience any layoffs within the
last 6 months (in the same or similar occupation and at the same work sites) and has no plans for
layoffs in the next 6 months (in the same or similar occupation and at the same work sites).

II. **From Mr. Rettig:**

1. Completion of the attached W&G Applicant Questionnaire;

2. A letter from each of Mr. Rettig's former employers with whom he performed work relating to his prospective position, each confirming his prior employment, including job title(s), full-time employment status, dates of employment (from month/day/year to month/day year), and detailed listing of his job duties;

3. Scanned copies of Mr. Rettig's academic credentials (diplomas and transcripts/mark sheets);

4. Mr. Rettig's completion (in draft) of the attached DS-9089, Sections J, K and L (please provide employment information for all related former positions, even if longer than 3 years ago; please include supervisor's name and telephone number for all positions);

5. Scanned color copy of both sides of Mr. Rettig's current Form I-94 – Arrival/Departure Record (small, white card stapled in the passport) that he received on his most recent entry into the United States;

6. Scanned color copy of Mr. Rettig's passport (cover to cover), including any U.S. visa stamps; and

7. Copy of paystubs for the month of PERM filing (to be provided after filing).

Please note that the above list is not exhaustive. We may need additional information and/or documentation from you as we proceed.

In the meantime, should you have any questions in regard to this matter, please feel free to contact us.

Kind regards,

HILDE HOLLAND | WUERSCH & GERING LLP
100 Wall Street, 21st Fl. | New York, New York 10005
212-509-4715 (direct) | 212-509-5050 (firm) | 212-509-9559 (fax)
hilde.holland@wg-law.com | www.wg-law.com

This message and any attachments hereto contain confidential information and information which may be subject to the attorney-client privilege. It is intended for the individual or entity named above. If you are not the intended recipient, please do not read, copy, use or disclose this communication to others; also please notify the sender by replying to this message, and then delete it from your system. Thank you.

Any advice in this email concerning a federal tax issue is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding any tax penalties that can be imposed by the Internal Revenue Service, or for promoting, marketing or recommending any tax-related matters addressed herein.

Draft Job Duties - Rettig.doc    W&G Applicant Questionnaire.DOC    ETA 9089 - Sections J, K, and L.pdf

# EXHIBIT D

RETTIG, Thomas/TUV Rheinland Rail Sciences, Inc. - PERM Application; Request for L...   Page 1 of 1

From: tomrettig <tomrettig@aol.com>
To: hholland <hholland@wg-law.com>
Subject: RETTIG, Thomas/TUV Rheinland Rail Sciences, Inc. - PERM Application; Request for Info
Date: Sat, Apr 2, 2011 4:16 pm
Attachments: Resume_Thomas_Rettig_2011.pdf (27K), Rettig_Academic_Credentials.pdf (743K), Rettig_EmplVerif_Dornier.pdf (50K), Rettig_EmplVerif_MGB.pdf (51K), Rettig_EmplVerif_Siemens-Berlin.pdf (53K), Rettig_EmplVerif_Siemens-Duewag.pdf (49K), Rettig_EmplVerif_Siemens-Sacramento.pdf (70K), Rettig_ETA_9089_J-K-L.pdf (272K), Rettig_Form_I-94.pdf (563K), Rettig_Passport.pdf (4643K), W&G_Applicant_Questionnaire_RETTIG_March2011.DOC (128K)

Dear Mrs. Holland,

Attached please find the following information required for the PERM application according to your Feb. 4, 2011 email. I would appreciate a brief confirmation that you received this email. Please let me know of any other information you may need.

Best Regards,
Thomas Rettig

<u>From Mr. Rettig:</u>

1. Completion of the attached W&G Applicant Questionnaire;

2. A letter from each of Mr. Rettig's former employers with whom he performed work <u>relating to his prospective position,</u> each confirming his prior employment, including job title(s), full-time employment status, dates of employment (from month/day/year to month/day year), and detailed listing of his job duties;

3. Scanned copies of Mr. Rettig's academic credentials (diplomas and transcripts/mark sheets);

4. Mr. Rettig's completion (in draft) of the attached DS-9089, Sections J, K ,and L (please provide employment information for all related former positions, <u>even if longer than 3 years ago;</u> please include <u>supervisor's name and telephone number for all positions);</u>

5. Scanned color copy of both sides of Mr. Rettig's current Form I-94 – Arrival/Departure Record (small, white card stapled in the passport) that he received on his most recent entry into the United States;

6. Scanned color copy of Mr. Rettig's passport (cover to cover), including any U.S. visa stamps;

OMB Approval: 1205-0451
Expiration Date: 03/31/2008

Application for Permanent Employment Certification
ETA Form 9089
U.S. Department of Labor



## I. Recruitment Information Continued

12. Date of second newspaper advertisement or date of publication of journal identified in question 11:

### d. Professional Recruitment Information – Complete if the answer to question I.a.1 is YES or if the answer to I.a.2-B is YES. Complete at least 3 of the items.

| | |
|---|---|
| 13. Dates advertised at job fair<br>From:          To: | 14. Dates of on-campus recruiting<br>From:          To: |
| 15. Dates posted on employer web site<br>From:          To: | 16. Dates advertised with trade or professional organization<br>From:          To: |
| 17. Dates listed with job search web site<br>From:          To: | 18. Dates listed with private employment firm<br>From:          To: |
| 19. Dates advertised with employee referral program<br>From:          To: | 20. Dates advertised with campus placement office<br>From:          To: |
| 21. Dates advertised with local or ethnic newspaper<br>From:          To: | 22. Dates advertised with radio or TV ads<br>From:          To: |

### e. General Information – All must complete this section.

| | | |
|---|---|---|
| 23. Has the employer received payment of any kind for the submission of this application? | ☐ Yes  ☐ No | |
| 23-A. If Yes, describe details of the payment including the amount, date and purpose of the payment : | | |
| 24. Has the bargaining representative for workers in the occupation in which the alien will be employed been provided with notice of this filing at least 30 days but not more than 180 days before the date the application is filed? | ☐ Yes  ☐ No  ☐ NA | |
| 25. If there is no bargaining representative, has a notice of this filing been posted for 10 business days in a conspicuous location at the place of employment, ending at least 30 days before but not more than 180 days before the date the application is filed? | ☐ Yes  ☐ No  ☐ NA | |
| 26. Has the employer had a layoff in the area of intended employment in the occupation involved in this application or in a related occupation within the six months immediately preceding the filing of this application? | ☐ Yes  ☐ No | |
| 26-A. If Yes, were the laid off U.S. workers notified and considered for the job opportunity for which certification is sought? | ☐ Yes  ☐ No  ☐ NA | |

## J. Alien Information (This section must be filled out. This information must be different from the agent or attorney information listed in Section E).

| | | |
|---|---|---|
| 1. Alien's last name  Rettig | First name  Thomas | Full middle name |

| |
|---|
| 2. Current address 1  2989 Commonwealth Circle |
| Address 2 |

| | | | |
|---|---|---|---|
| 3. City  Alpharetta | State/Province  GA | Country  United States | Postal code  30004 |

| |
|---|
| 4. Phone number of current residence  678- 566 - 0411 |

| | |
|---|---|
| 5. Country of citizenship  Germany | 6. Country of birth  Germany |
| 7. Alien's date of birth  March 28, 1965 | 8. Class of admission |
| 9. Alien registration number (A#) | 10. Alien admission number (I-94)  503724179 24 |

| |
|---|
| 11. Education: highest level achieved relevant to the requested occupation:<br>☐ None   ☐ High School   ☐ Associate's   ☐ Bachelor's   ☒ Master's   ☐ Doctorate   ☐ Other |

OMB Approval: 1205-0451
Expiration Date: 03/31/2008


Application for Permanent Employment Certification
ETA Form 9089
U.S. Department of Labor



## J. Alien Information Continued

**11-A. If Other indicated in question 11, specify**

**12. Specify major field(s) of study** *Mechanical Engineering*

**13. Year relevant education completed** *1991*

**14. Institution where relevant education specified in question 11 was received**
*University of Rostock, Germany*

**15. Address 1 of conferring institution**
*Justus-von-Liebig-Weg 6*
Address 2

**16. City** *Rostock*  State/Province  Country *Germany*  Postal code *18059*

| | |
|---|---|
| **17.** Did the alien complete the training required for the requested job opportunity, as indicated in question H.6? | ☒ Yes ☐ No ☐ NA |
| **18.** Does the alien have the experience as required for the requested job opportunity indicated in question H.6? | ☒ Yes ☐ No ☐ NA |
| **19.** Does the alien possess the alternate combination of education and experience as indicated in question H.8? | ☐ Yes ☐ No ☒ NA |
| **20.** Does the alien have the experience in an alternate occupation specified in question H.10? | ☐ Yes ☐ No ☒ NA |
| **21.** Did the alien gain any of the qualifying experience with the employer in a position substantially comparable to the job opportunity requested? | ☒ Yes ☐ No ☐ NA |
| **22.** Did the employer pay for any of the alien's education or training necessary to satisfy any of the employer's job requirements for this position? | ☒ Yes ☐ No |
| **23.** Is the alien currently employed by the petitioning employer? | ☒ Yes ☐ No |

## K. Alien Work Experience

List all jobs the alien has held during the past 3 years. Also list any other experience that qualifies the alien for the job opportunity for which the employer is seeking certification.

**a. Job 1**

**1. Employer name** *TUV Rheinland Rail Sciences, Inc.*

**2. Address 1** *411 N Clarendon Ave*
Address 2

**3. City** *Scottdale*  State/Province *GA*  Country *United States*  Postal code *30079*

**4. Type of business** *Railroad Engineering + Testing*  **5. Job title** *Vice President Business Devel.*

**6. Start date** *Aug 2010*  **7. End date** *present*  **8. Number of hours worked per week** *50*

OMB Approval: 1205-0451
Expiration Date: 03/31/2008

Application for Permanent Employment Certification
ETA Form 9089
U.S. Department of Labor



## K. Alien Work Experience Continued

9. Job details (duties performed, use of tools, machines, equipment, skills, qualifications, certifications, licenses, etc.
Include the phone number of the employer and the name of the alien's supervisor.)
- Organize and conduct domestic and international business development
- Develop and write project proposals
- Attend sales visits, corporate presentations, trade shows, conferences
- Report on marketing and sales data
- Liaise between employer and other international TUV Rheinland group affiliates
- Identify new domestic and international markets/services
- Direct marketing efforts
- Perform regular reviews of trade periodicals, business news, other sources
Supervisor: Mr. Gary Wolf, President   ph. 404-294-5300

### b. Job 2

1. Employer name TUV Rheinland of North America, Inc.

2. Address 1   12 Commerce Rd

Address 2

3. City Newtown   State/Province CT   Country United States   Postal code 06470

4. Type of business Product Testing & Approvals   5. Job title Division Manager

6. Start date July 2006   7. End date July 2010   8. Number of hours worked per week 50

9. Job details (duties performed, use of tools, machines, equipment, skills, qualifications, certifications, licenses, etc.
Include the phone number of the employer and the name of the alien's supervisor.)
- Managed the Guided Transport Systems Division
- Directed projects in the area of rail equipment safety assessments
  and compliance testing
- Developed and enforced instructions and procedures for performance
  of tests, assessments, inspections, reviews and certifications for transport systems
- Directed operations of engineers
- Conducted internal audits and process reviews

Supervisor: Mr. Deep Krishnan, Sr. Vice President   ph. 617-926-4888

### c. Job 3

1. Employer name

2. Address 1

Address 2

3. City   State/Province   Country   Postal code

4. Type of business   5. Job title

6. Start date   7. End date   8. Number of hours worked per week

OMB Approval:   1205-0451
Expiration Date:  03/31/2008

Application for Permanent Employment Certification
ETA Form 9089
U.S. Department of Labor



### K. Alien Work Experience Continued

9.  Job details (duties performed, use of tools, machines, equipment, skills, qualifications, certifications, licenses, etc.
Include the phone number of the employer and the name of the alien's supervisor.)

### L. Alien Declaration

*I declare under penalty of perjury that Sections J and K are true and correct.  I understand that to knowingly furnish
false information in the preparation of this form and any supplement thereto or to aid, abet, or counsel another to do so is
a federal offense punishable by a fine or imprisonment up to five years or both under 18 U.S.C. §§ 2 and 1001.  Other
penalties apply as well to fraud or misuse of ETA immigration documents and to perjury with respect to such documents
under 18 U.S.C. §§ 1546 and 1621.*

*In addition, I further declare under penalty of perjury that I intend to accept the position offered in Section H of this
application if a labor certification is approved and I am granted a visa or an adjustment of status based on this
application.*

| 1. Alien's last name  *Rettig* | First name  *Thomas* | Full middle name |
|---|---|---|
| 2. Signature  *Thomas Rettig* | Date signed  *April 2, 2011* | |

Note – The signature and date signed do not have to be filled out when electronically submitting to the Department of Labor for
processing, but must be complete when submitting by mail.  If the application is submitted electronically, any resulting certification
MUST be signed *immediately upon receipt* from DOL before it can be submitted to USCIS for final processing.

### M. Declaration of Preparer

| 1. Was the application completed by the employer?<br>If No, you must complete this section. | ☐   Yes          ☐   No |
|---|---|

*I hereby certify that I have prepared this application at the direct request of the employer listed in Section C and
that to the best of my knowledge the information contained herein is true and correct.  I understand that to
knowingly furnish false information in the preparation of this form and any supplement thereto or to aid, abet, or counsel
another to do so is a federal offense punishable by a fine, imprisonment up to five years or both under 18 U.S.C. §§ 2 and
1001.  Other penalties apply as well to fraud or misuse of ETA immigration documents and to perjury with respect to such
documents under 18 U.S.C. §§ 1546 and 1621.*

| 2. Preparer's last name | First name | Middle initial |
|---|---|---|
| 3. Title | | |
| 4. E-mail address | | |
| 5. Signature | Date signed | |

Note – The signature and date signed do not have to be filled out when electronically submitting to the Department of Labor for
processing, but must be complete when submitting by mail.  If the application is submitted electronically, any resulting certification MUST
be signed *immediately upon receipt* from DOL before it can be submitted to USCIS for final processing.

# EXHIBIT E

RE: Status PERM?
Thomas Rettig  to: Hilde Holland
Cc: "Thomas Rettig"

11/09/2011 05:27 PM

Dear Mrs. Holland,

Just touching base to see if any update is available on this?    ✓ *No response !*
Appreciate it!

TUV Rheinland Rail Sciences, Inc.
411 N Clarendon Ave
Scottdale, GA 30079-0885

Thomas Rettig
Vice President Business Development
Tel     +1 (404) 294-5300
Cell    +1 (203) 278-4775
Fax    +1 (404) 294-5423
Email  trettig@us.tuv.com
http://www.tuv.com

In the event that this email contains any proposal, or the acceptance of any proposal, by TUV Rheinland
Rail Sciences, Inc. to provide any testing, consulting, or other professional services, please be advised
that such proposal or acceptance is made subject to the  TUV Rheinland Rail Sciences, Inc. General
Terms and Conditions which are incorporated herein as though fully set forth in this email. You are hereby
agreeing to accept each and every one of the  TUV Rheinland Rail Sciences, Inc. General Terms and
Conditions. To obtain a copy of the General Terms and Conditions, please contact the sender immediately
via email, or call the office at 404.294.5300, or visit our website, www.tuv.com.

| "Hilde Holland"     Dear Mr. Rettig, | 05/13/2011 04:16:51 PM |

From:     "Hilde Holland" <hholland@wg-law.com>
To:        "Thomas Rettig" <TRettig@us.tuv.com>
Date:     05/13/2011 04:16 PM
Subject:  RE: Status PERM?

Dear Mr. Rettig,

We have analyzed the position and your credentials and will file the requisite prevailing wage request
with DOL next week. This process takes 4-6 weeks, and we will then post the requisite ad postings. I
keep you posted.

Kind regards,

HILDE HOLLAND | WUERSCH & GERING LLP
100 Wall Street, 21st Fl. | New York, New York 10005
212-509-4715 (direct) | 212-509-5050 (firm) | 212-509-9559 (fax)
hilde.holland@wg-law.com | www.wg-law.com

This message and any attachments hereto contain confidential information and information which may be subject to the attorney-client privilege.
It is intended for the individual or entity named above. If you are not the intended recipient, please do not read, copy, use or disclose this
communication to others; also please notify the sender by replying to this message and then delete it from your system. Thank you.

Any advice in this email concerning a federal tax issue is not intended or written to be used and cannot be used by any taxpayer for the purpose

of avoiding any tax penalties that can be imposed by the Internal Revenue Service or for promoting, marketing or recommending any tax-related matters addressed herein.

**From:** Thomas Rettig [mailto:TRettig@us.tuv.com]
**Sent:** Friday, May 13, 2011 4:01 PM
**To:** Hilde Holland
**Subject:** Status PERM?

Dear Mrs. Holland,

I am just touching base to see if there is an update on the PERM application progress available? Since I haven't heard anything for a while I assume the information and documents provided a while ago have been sufficient?

Best Regards,
Thomas Rettig

TUV Rheinland Rail Sciences, Inc.
411 N Clarendon Ave
Scottdale, GA 30079-0885

Thomas Rettig
Vice President Business Development
Tel     +1 (404) 294-5300
Cell    +1 (203) 278-4775
Fax    +1 (404) 294-5423
Email  trettig@us.tuv.com
http://www.tuv.com

In the event that this email contains any proposal, or the acceptance of any proposal, by TUV Rheinland Rail Sciences, Inc. to provide any testing, consulting, or other professional services, please be advised that such proposal or acceptance is made subject to the  TUV Rheinland Rail Sciences, Inc. General Terms and Conditions which are incorporated herein as though fully set forth in this email. You are hereby agreeing to accept each and every one of the  TUV Rheinland Rail Sciences, Inc. General Terms and Conditions. To obtain a copy of the General Terms and Conditions, please contact the sender immediately via email, or call the office at 404.294.5300, or visit our website, www.tuv.com.

Please be advised that TEST RESULTS, TEST REPORTS, CERTIFICATIONS, TEST MARKS and any other STATEMENTS regarding a work order are as a matter of principle not issued via e-mail! Any communications via e-mail regarding such matters are for informational purposes only, shall not be relied on, and do not replace or anticipate the formal notification regarding certification, test marks, test results or other decisions in accordance with our Testing and Certification Regulations.

# EXHIBIT F

# WUERSCH & GERING LLP

Hilde Holland
Direct Line: 212-509-4715
Email:   hilde.holland@wg-law.com

July 11, 2011

TO WHOM IT MAY CONCERN

Re:     **Thomas Rettig-Application for Permanent Residency Application**
        **Our Ref.:    8022-024**

Dear Madam/Sir:

We are the immigration attorneys for TUV Rheinland Rail Sciences, Inc. ("TUV"), Mr. Thomas Rettig's current U.S. employer.

We herewith confirm that we are currently in the process of preparing TUV's Application for Alien Labor Certification, as part of TUV's permanent residency application for Mr. Rettig and his family, including his stepchild, Olivia Eckhard.

Consequently, legally permissible steps have been taken toward obtaining permanent residency status for Mr. Thomas Rettig, and his derivative immediate family members.

Please do not hesitate to contact me if you have any questions.

Kind regards,

Hilde Holland

# EXHIBIT G

January 6, 2011

2989 Commonwealth Circle
Alpharetta, GA 30004

Re:   <u>Confidential Separation Agreement and General
Release of All Claims</u>

Dear Thomas Rettig :

This letter confirms that on January 6, 2011, I personally delivered to you the enclosed Confidential Separation Agreement and General Release of All Claims ("Separation Agreement").   You have up to 21 days after receipt of this Separation Agreement consider whether to sign and date this Separation Agreement, in which you waive important rights, including those under the Age Discrimination in Employment Act of 1967.   We advise you to consult with an attorney of your choosing prior to signing this Separation Agreement concerning the rights you are waiving as well as all other terms of this Separation Agreement.

Very truly yours,

TUV Rheinland of North America, Inc.

Sebastian Oertel

## SEPARATION AGREEMENT AND GENERAL RELEASE

TUV Rheinland Rail Sciences, Inc. ("RSI") and Thomas Rettig, Mr. Rettig's heirs, executors, administrators, successors, and assigns (collectively referred to as "Employee"), agree that:

      1.    **Last Day of Employment.** Employee's last day of employment with RSI is April 6, 2012.

      2.    **Consideration.** In consideration for Employee signing this Agreement and General Release, the expiration of the seven (7) day revocation period without Employee's revocation of the Agreement and General Release, Employee's execution of the Reaffirmation Provision attached hereto as Exhibit A on the last date of the three (3) month Notice Period (see subpart (a) below), and Employee's compliance with the terms of this Agreement and General Release and Reaffirmation Provision, RSI agrees:

      a.    to pay to Employee salary continuation at Employee's base rate of pay, less lawful deductions, in accordance with RSI's regular payroll practices for three months (the "Notice Period") to commence on the next payroll period after Employee executes this agreement. This amount will be reported on Employee's IRS form W2. During this Notice Period, Employee may continue his health insurance coverage under the health insurance plan provided to Employee immediately prior to the Last Day of Employment. Thereafter, Employee shall be entitled to elect COBRA coverage at Employee's own expense;

      b.    to pay to Employee a lump sum of either ten thousand dollars ($10,000.00) or two thousand dollars ($2,000.00), less lawful deductions, within ten (10) business days after the last date of the three (3) month Notice Period. This will be reported on Employee's IRS form W2. RSI will pay Employee ten thousand dollars, less lawful deductions, if Employee is unable to provide other employment within the United States within the Notice Period and must relocate outside of the United States. If, however, Employee finds other employment within the United States and does not have to relocate outside of the United States, RSI will pay Employee two thousand dollars, less lawful deductions. This paragraph may not be construed to mean that RSI will pay Employee twelve thousand dollars.

      3.    **No Consideration Absent Execution of this Agreement.** Employee understands and agrees that Employee would not receive the monies and/or benefits specified in paragraph "2" above, except for Employee's execution of this Separation Agreement and General Release, expiration of the seven (7) day revocation period without Employee's revocation of the Separation Agreement and General Release, Employee's execution of the Reaffirmation Provision attached hereto as Exhibit A, and the fulfillment of the promises contained herein.

      4.    **General Release of All Claims.** Employee knowingly and voluntarily releases and forever discharges TUV Rheinland Rail Sciences, Inc., its parent corporations, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, including TUV Rheinland of North America, Inc. and TUV Rheinland North American Holding, Inc., and their

current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and its employee benefit plans and programs and their administrators and fiduciaries (collectively referred to throughout the remainder of this Separation Agreement and General Release as "Releasees"), of and from any and all claims, known and unknown, asserted or unasserted, which Employee has or may have against Releasees as of the date of execution of this Separation Agreement and General Release, including, but not limited to, any alleged violation of:

- Title VII of the Civil Rights Act of 1964;
- The Civil Rights Act of 1991;
- Sections 1981 through 1988 of Title 42 of the United States Code;
- The Employee Retirement Income Security Act of 1974 (except for any vested benefits under any tax qualified benefit plan);
- The Immigration Reform and Control Act;
- The Americans with Disabilities Act of 1990;
- The Age Discrimination in Employment Act of 1967;
- The Worker Adjustment and Retraining Notification Act;
- The Fair Credit Reporting Act;
- The Family and Medical Leave Act;
- The Equal Pay Act;
- The National Labor Relations Act, to the extent permitted by law;
- The Older Workers Benefit Protection Act;
- The Consolidated Omnibus Budget Reconciliation Act, to the extent permitted by law;
- The Georgia AIDS Confidentiality Act, O.C.G.A. § 24-9-47;
- The Georgia Equal Pay Act, O.C.G.A. § 34-5-1 et seq.;
- The Georgia Age Discrimination in Employment Act, O.C.G.A. § 34-1-2;
- The Georgia Equal Employment for Persons with Disabilities Code, O.C.G.A. § 34-6A-1 et seq.;
- The Georgia Wage Payment and Work Hour Laws;
- The City of Atlanta Anti-Discrimination Ordinance, Part II, Chapter 94, Article 11, § 94-10, et seq.;
- any other federal, state or local law, rule, regulation, or ordinance;
- any public policy, contract, tort, or common law; or
- any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters.

If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which RSI or any other Releasee identified in this Separation Agreement and General Release is a party. If, without Employee's prior knowledge and consent, he is made a member of a class in any proceeding against RSI or any other Releasee, he agrees to opt out of the class at the first opportunity.

Accepted by: _____ Thomas Rettig          _____ RSI                    Page 2 of 5

5.     **Acknowledgments and Affirmations.**

Employee affirms that Employee has not filed, caused to be filed, or presently is a party to any claim against RSI.

Employee also affirms that Employee has been paid and/or has received all compensation, wages, bonuses, commissions, and/or benefits to which Employee may be entitled. Employee affirms that Employee has been granted any leave to which Employee was entitled under the Family and Medical Leave Act or related state or local leave or disability accommodation laws.

Employee further affirms that Employee has no known workplace injuries or occupational diseases.

Employee also affirms that Employee has not divulged any proprietary or confidential information of RSI and will continue to maintain the confidentiality of such information consistent with RSI's policies and/or common law as well as the Confidentiality Agreement that Employee signed on April 23, 2011 which is attached as Exhibit B.

Employee further affirms that Employee has not been retaliated against for reporting any allegations of wrongdoing by RSI or its officers, including any allegations of corporate fraud. The Parties acknowledge that this Separation Agreement and General Release does not limit any party's right, where applicable, to file or participate in an investigative proceeding of any federal, state or local governmental agency. To the extent permitted by law, Employee agrees that if such an administrative claim is made, Employee shall not be entitled to recover any individual monetary relief or other individual remedies.

Employee affirms that all of RSI's decisions regarding Employee's pay and benefits through the date of Employee's separation of employment were not discriminatory based on age, disability, race, color, sex, religion, national origin or any other classification protected by law.

6.     **Cooperation.** During the Notice Period, Employee will make himself available, including responding to telephone calls or emails or coming into the office, upon request to provide transition assistance to RSI and respond to any requests for information by RSI or its agents concerning matters relating to his employment, job duties or about which he has personal knowledge of information. RSI understands that his cooperation during the Transition Period is a material requirement of this Confidential Agreement and General Release and that should he fail in good faith to provide such assistance, he will not be eligible to receive the consideration described in Section 2 above.

7.     **Confidentiality and Return of Property.** Employee agrees not to disclose any information regarding the underlying facts leading up to or the existence or substance of this Separation Agreement and General Release, including the amount of consideration, except to Employee's spouse, tax advisor, and/or an attorney with whom Employee chooses to consult regarding Employee's consideration of this Separation Agreement and General Release, or pursuant to court order, subpoena or as otherwise required by law.

Accepted by: _____ Thomas Rettig          _____ RSI                    Page 3 of 5

Employee affirms that Employee has returned all of RSI's property, documents, and/or any confidential information in Employee's possession or control. Employee also affirms that Employee is in possession of all of Employee's property that Employee had at RSI's premises and that RSI is not in possession of any of Employee's property.

8.   **Nondisparagement.**  Employee agrees that Employee will not in any way disparage RSI, including, but not limited to, its current and former owners, officers, directors and employees, or make or solicit any comments, statements, or the like to the media or to others that may be considered to be derogatory or detrimental to the good name or business reputation of RSI.  In the event that Employee violates this provision, Employee acknowledges that RSI has the right to institute an action against Employee for any damages plus the reimbursement of attorneys' fees and costs incurred in connection with the enforcement of this provision.  It is understood that the rest of this Separation Agreement and General Release would, nevertheless, remain in full force and effect.

9.   **Governing Law and Interpretation.**  This Separation Agreement and General Release shall be governed and conformed in accordance with the laws of the state of Connecticut without regard to its conflict of laws provision.  In the event of a breach of any provision of this Separation Agreement and General Release, any party may institute an action specifically to enforce any term or terms of this Separation Agreement and General Release and/or seek any damages for breach.  Should any provision of this Separation Agreement and General Release be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Separation Agreement and General Release in full force and effect.

10.   **Nonadmission of Wrongdoing.**  The Parties agree that neither this Separation Agreement and General Release nor the furnishing of the consideration for this Separation Agreement and General Release shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

11.   **Amendment.**  This Separation Agreement and General Release may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Separation Agreement and General Release.

12.   **Entire Agreement.**  This Separation Agreement and General Release sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties, except the Confidentiality Agreement executed by Employee and attached as Exhibit B. Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Separation Agreement and General Release, except for those set forth in this Separation Agreement and General Release.

**EMPLOYEE IS ADVISED THAT EMPLOYEE HAS UP TO TWENTY-ONE (21) CALENDAR DAYS TO CONSIDER THIS AGREEMENT AND GENERAL RELEASE.  EMPLOYEE ALSO IS ADVISED TO CONSULT WITH AN ATTORNEY**

Accepted by:  _____ Thomas Rettig              _____ RSI                              Page 4 of 5

PRIOR TO EMPLOYEE'S SIGNING OF THIS AGREEMENT AND GENERAL RELEASE.

EMPLOYEE MAY REVOKE THIS AGREEMENT AND GENERAL RELEASE FOR A PERIOD OF SEVEN (7) CALENDAR DAYS FOLLOWING THE DAY EMPLOYER SIGNS THIS AGREEMENT AND GENERAL RELEASE. ANY REVOCATION WITHIN THIS PERIOD MUST BE SUBMITTED, IN WRITING, TO DERWIN D. SHELLEY AND STATE, "I HEREBY REVOKE MY ACCEPTANCE OF OUR AGREEMENT AND GENERAL RELEASE." THE REVOCATION MUST BE PERSONALLY DELIVERED TO NANCY A. CULLINEY OR HER DESIGNEE, OR MAILED TO NANCY A. CULLINEY, HR DIRECTOR, TUV RHEINLAND NORTH AMERICA HOLDING, INC., 1300 MASSACHUSETTS AVENUE, SUITE 103, BOXBOROUGH, MA 01719 AND POSTMARKED WITHIN SEVEN (7) CALENDAR DAYS AFTER EMPLOYEE SIGNS THIS AGREEMENT AND GENERAL RELEASE.

EMPLOYEE AGREES THAT ANY MODIFICATIONS, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT AND GENERAL RELEASE, DO NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL UP TO TWENTY-ONE (21) CALENDAR DAY CONSIDERATION PERIOD.

EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT AND GENERAL RELEASE INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.

The Parties knowingly and voluntarily sign this Separation Agreement and General Release as of the date(s) set forth below:

TUV Rheinland Rail Sciences, Inc.

By: _____

By: _____
Name: Nancy A. Culliney

Thomas Rettig

Title:  HR Director, TUV Rheinland North America Holding, Inc.

Date: _____

Date: _1/6/2012

<u>EXHIBIT A</u>

### REAFFIRMATION PROVISION

Thomas Rettig ("Employee") hereby reaffirms the Agreement and General Release which he agreed to and entered into on _____, 201__ with TUV Rheinland Rail Sciences, Inc. ("RSI") and incorporates by reference all provisions therein.

Specifically, in exchange for the consideration set forth in the Separation Agreement and General Release Employee knowingly and voluntarily releases and forever discharges TUV Rheinland Rail Sciences, Inc., its parent corporations, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, including TUV Rheinland of North America, Inc. and TUV Rheinland North American Holding, Inc., and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and its employee benefit plans and programs and their administrators and fiduciaries (collectively referred to throughout the remainder of this Separation Agreement and General Release as "Releasees"), of and from any and all claims, known and unknown, asserted or unasserted, which Employee has or may have against Releasees as of the date of execution of this Separation Agreement and General Release, including, but not limited to, any alleged violation of:

- Title VII of the Civil Rights Act of 1964;
- The Civil Rights Act of 1991;
- Sections 1981 through 1988 of Title 42 of the United States Code;
- The Employee Retirement Income Security Act of 1974 (except for any vested benefits under any tax qualified benefit plan);
- The Immigration Reform and Control Act;
- The Americans with Disabilities Act of 1990;
- The Age Discrimination in Employment Act of 1967;
- The Worker Adjustment and Retraining Notification Act;
- The Fair Credit Reporting Act;
- The Family and Medical Leave Act;
- The Equal Pay Act;
- The National Labor Relations Act, to the extent permitted by law;
- The Older Workers Benefit Protection Act;
- The Consolidated Omnibus Budget Reconciliation Act, to the extent permitted by law;
- The Georgia AIDS Confidentiality Act, O.C.G.A. § 24-9-47;
- The Georgia Equal Pay Act, O.C.G.A. § 34-5-1 et seq.;
- The Georgia Age Discrimination in Employment Act, O.C.G.A. § 34-1-2;
- The Georgia Equal Employment for Persons with Disabilities Code, O.C.G.A. § 34-6A-1 et seq.;
- The Georgia Wage Payment and Work Hour Laws;
- The City of Atlanta Anti-Discrimination Ordinance, Part II, Chapter 94, Article 11, § 94-10, et seq.;
- any other federal, state or local law, rule, regulation, or ordinance;

Accepted by: ____ Thomas Rettig                                            Page 1 of 2

- any public policy, contract, tort, or common law; or
- any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters.

If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which RSI or any other Releasee identified in this Separation Agreement and General Release is a party.  If, without Employee's prior knowledge and consent, he is made a member of a class in any proceeding against RSI or any other Releasee, he agrees to opt out of the class at the first opportunity.

Employee affirms that Employee has not filed, caused to be filed, or presently is a party to any claim against RSI. Employee also affirms that Employee has been paid and/or has received all compensation, wages, bonuses, commissions, and/or benefits to which Employee may be entitled.   Employee affirms that Employee has been granted any leave to which Employee was entitled under the Family and Medical Leave Act or related state or local leave or disability accommodation laws.   Employee further affirms that Employee has no known workplace injuries or occupational diseases.

Employee also affirms that Employee has not divulged any proprietary or confidential information of RSI and will continue to maintain the confidentiality of such information consistent with RSI's policies and/or common law as well as the Confidentiality Agreement that Employee signed on April 23, 2011 which is attached as Exhibit B to the Separation Agreement and General Release.

Employee affirms that Employee has returned all of RSI's property, documents, and/or any confidential information in Employee's possession or control.  Employee also affirms that Employee is in possession of all of Employee's property that Employee had at RSI's premises and that RSI is not in possession of any of Employee's property.

Failure to abide by the terms of this Reaffirmation Provision shall result in the termination of any and all payments to Employee pursuant to the Agreement and General Release. It is understood, however, that the rest of the Agreement and General Release would, nevertheless, remain in full force and effect.

IN WITNESS WHEREOF, Employee knowingly and voluntarily executed this Reaffirmation Provision as of the date set forth below:

_____
Thomas Rettig

_____
Date

Accepted by: ____ Thomas Rettig                                       Page 2 of 2

# EXHIBIT H

 **Fw: Summary of 1/ 16/2012 Meeting Correctiom of TC to TR**
Nancy Culliney  to: Thomas Rettig                                                01/11/2012 04:47 PM
Cc:  Sebastian Oertel

| History: | This message has been forwarded. |
| --- | --- |

Correction from TC to TR throughout...

Nancy A. Culliney
HR Director
TUV Rheinland North America Holding, Inc.
1300 Massachusetts Avenue, Suite 103
Boxborough, MA  01719
USA

Tel. + (978) 266-9500, x235
Fax + (978) 266-9992
email: nculliney@us.tuv.com
---- Forwarded by Nancy Culliney/US/TUV on 01/11/2012 04:40 PM ----

| From: | Nancy Culliney/US/TUV |
| --- | --- |
| To: | Thomas Rettig/US/TUV@TUV |
| Cc: | Sebastian Oertel/US/TUV@TUV |
| Date: | 01/11/2012 04:25 PM |
| Subject: | Re: Summary of 1/ 16/2012 Meeting |

Thomas,

Thomas I am sending you a list of modified points (in blue print) that reflect the substance of the meeting held on 1/6/2012.


1/6/2012 4p.m. EST

Thomas Rettig and Sebastian Oertel were at the RSI Atlanta location and NC was present via telephone.

- TR asked whether the telecon could be recorded. Due to NC feeling uncomfortable with it it was not recorded.

- TR asked whether the meeting could be recorded or would he need to take detailed notes.  NC indicated that the conversation could not be recorded as conversations at TUV are not recorded (NC did not state that she felt uncomfortable). TR indicated that he would then need to take detailed notes.  Points were repeated in order for him to take the detailed notes.

- SO advised TR on consulting with an attorney of my choosing

- SO indicated that the General Release cover letter TR was being given indicated that TR should review documents being given to him with an Attorney of his choice.

- TUV intends to tacminate the position of VP Business Development at TUV-RSI. The proposed

last day of employment is April 6th, 2012.

- TUV is eliminating the position of VP Business Development at TUV-RSI. If TR accepts the agreement, the last day of employment will be 4/6/2012. If TR does not accept the agreement, the last day of employment will be 1/6/2012.

- SO provided to TR a written "Confidential Separation Agreement and General Release of All Claims" for review.

- TR has up to 21 days to respond

- TR has 21 days in which to consider, sign and return the "Confidential Separation Agreement and General Release of All Claims"

- According to SO the reason for the termination is the "financial performance of TUV-RSI in 2011"; thus Senior Management (i.e. CEO and Shareholders) have initiated a reorganization of TUV-RSI which the termination of my position is part of

- SO indicated that the reason for the position elimination is the "financial performance of TUV-RSI in 2011: thus Senior Mangement (i.e. CEO and Shareholders) have made the decision to eliminate the position of VP Business Development.

- At time of this telecon NC was not in a position to acknowledge that she is in possession of TUV's "Offer of Employment" to TR dated 3/29/2011 and signed by TR 4/23/2011. She will get back to TUV's files and provide such acknowledgement by email.

- NC indicated that she wanted to make sure the offer letter that she possessed had the same dates (NC has since checked and confirmed that the signed offer letter from Cindy Doyle is dated 3/29/2011 and was signed by TR on 4/23/2011). In order to move to other questions, she suggested that she would indicate by email that the offer of employment letter that she is in possession of is dated with those dates.

- TR asked where the Greencard application process is at this point. He was told the process is put on hold. At time of this telecon NC was not in a position to provide details on whether the Greencard process was initiated at all and if so, what the status of the process was at the time when TUV "put it on hold".

- NC did indicate that TR's Green card process was initiated, and that it had been put on hold at the time the decision was made to eliminate the position of VP Business Development. NC indicated that she was unaware of the status of the process at the time that TUV put it on hold.

- NC stated that in order for her to provide detailed information about the Greencard application process and it's status TR is to put in a formal request to her.

- NC did not commit to providing the detailed information, but she stated that TR should provide a formal written request identifying what detailed information he was asking for.

- Upon asking why the "employment confirmation letter" for TR's step daughter's college was not issued at time of the request (see TR email to NC 11/21/2011) no answer was provided.

- NC indicated that this request was made in conjunction with TR's request for a letter confirming

that legally permissible steps have been initiated by TUV to obtain permanent residence for the Rettig family. NC's understanding was that both letters needed to be provided in order to result in a tuition discount for TRs daughter.

- TR is to provide suitable confirmation of whether the two letters for the college requested in November 2011 (above "employment confirmation letter" and another letter initially sent to TUV's immigration lawyer Hilde Holland "confirming that legally permissible steps have been initiated by TUV to obtain permanent residence for the Rettig family) would have been sufficient for the college to finalize the waiver on the out-of-state tuition.

- NC had asked TR to provide confirmation that the one letter of employment verification from TUV requested would have resulted in the tuition discount. NC's understanding was that both letters needed to be provided to the school to result in the tuition discount. NC informed TR that the Immigration Attorney was unable to provide the other letter stating that the legally permissible steps have been initiated by TUV to obtain permanent residence for the Rettig family, as the Green card process was not being continued. The Immigration Attorney could not provide this letter based upon the decision to eliminate the position of VP Business Development.

- TUV acknowledged they are available to receive and evaluate a response from TR including counter proposal.


Nancy A. Culliney
HR Director
TUV Rheinland North America Holding, Inc.
1300 Massachusetts Avenue, Suite 103
Boxborough, MA 01719
USA

Tel. + (978) 266-9500, x235
Fax + (978) 266-9992
email: nculliney@us.tuv.com

| Thomas Rettig | Nancy,Sebastian, This is just to summarize our... | 01/06/2012 05:34:39 PM |

| | |
|---|---|
| From: | Thomas Rettig/US/TUV |
| To: | Sebastian Oertel/US/TUV@TUV, Nancy Culliney/US/TUV@TUV |
| Date: | 01/06/2012 05:34 PM |
| Subject: | Summary of today's HR telecon |

Nancy,Sebastian,

This is just to summarize our conversation today:

- TR asked whether the telecon could be recorded. Due to NC feeling uncomfortable with it it was not recorded.
- SO advised TR on consulting with an attorney of my choosing
- TUV intends to terminate the position of VP Business Development at TUV-RSI. The proposed last day of employment is April 6th, 2012.
- SO provided to TR a written "Confidential Separation Agreement and General Release of All Claims" for review.
- TR has up to 21 days to respond.
- According to SO the reason for the termination is the "financial performance at TUV-RSI in 2011"; thus Senior Management (i.e. CEO and Shareholders) have initiated a reorganization of TUV-RSI which

the termination of my position is part of
- At time of this telecon NC was not in a position to acknowledge that she is in possession of TUV's "Offer of Employment" to TR dated 3/29/2011 and signed by TR 4/23/2011. She will get back to TUV's files and provide such acknowledgement by email.
- TR asked where the Greencard application process is at this point. He was told the process is put on hold. At time of this telecon NC was not in a position to provide details on whether the Greencard process was initiated at all and if so, what the status of the process was at the time when TUV "put it on hold".
- NC stated that in order for her to provide detailed information about the Greencard application process and it's status TR is to put in a formal request to her.
- Upon asking why the "employment confirmation letter" for TR's step daughter's college was not issued at time of the request (see TR email to NC 11/21/2011) no answer was provided.
- TR is to provide suitable confirmation of whether the two letters for the college requested in November 2011 (above "employment confirmation letter" and another letter initially sent to TUV's immigration lawyer Hilde Holland "confirming that legally permissible steps have been initiated by TUV to obtain permanent residence for the Rettig family) would have been sufficient for the college to finalize the waiver on the out-of-state tuition.
- TUV acknowledged they are available to receive and evaluate a response from TR including counter proposal.

Date/Time: Jan 6, 2012, appr. 4:20 pm
Participants: Nancy Culliney (NC), Sebastian Oertel (SO), Thomas Rettig (TR)

Regards,
Thomas

TUV Rheinland Rail Sciences, Inc.
411 N Clarendon Ave
Scottdale, GA 30079-0885

Thomas Rettig
Vice President Business Development
Tel     +1 (404) 294-5300
Cell    +1 (203) 278-4775
Fax    +1 (404) 294-5423
Email  trettig@us.tuv.com
http://www.tuv.com

In the event that this email contains any proposal, or the acceptance of any proposal, by TUV Rheinland Rail Sciences, Inc. to provide any testing, consulting, or other professional services, please be advised that such proposal or acceptance is made subject to the TUV Rheinland Rail Sciences, Inc. General Terms and Conditions which are incorporated herein as though fully set forth in this email. You are hereby agreeing to accept each and every one of the TUV Rheinland Rail Sciences, Inc. General Terms and Conditions. To obtain a copy of the General Terms and Conditions, please contact the sender immediately via email, or call the office at 404.294.5300, or visit our website, www.tuv.com.

# EXHIBIT I



**Cindy Doyle/US/TUV**
07/19/2010 11:57 AM

To   Thomas Rettig/US/TUV@TUV

cc   Deep Krishnan/US/TUV@TUV, Andreas
     Helbig/US/TUV@TUV, Hermina Soechtig/US/TUV@TUV,
     Susan Robidoux/US/TUV@TUV

bcc

Subject   RSI Employment

Hi Thomas

I wanted to let you know that I have gotten more information regarding your employment with TUV RSI. HR will be getting you a general employment transfer letter stating your new hire date, salary, bonus and title, within the next day or so. In the next 4-6 weeks I will be creating a handbook, policies/procedures, as well as a benefits information summaries (will be provided to you upon completion and approval form senior management).

I was informed that your request for GreenCard status was also approved. I have had further discussion with management and we will be going through that process once all the company legal HR documentation has been completed. In the mean time we will be processing your new VISA for the company transfer from TRNA to TUV RSI.

We know that you have followed the procedure as instructed by HR regarding your relocation to Georgia. We are providing all this information to senior management for final approval and oversight.

We appreciate your patience with this as we continue to finalize documentation and procedures for the newly acquired TUV RSI. Please feel free to contact myself or the HR staff with ay further questions.


Thank You

Cindy Doyle
TUV Rheinland of North America, Inc
Human Resources Manager
12 Commerce Road
Newtown, CT 06470
203-426-0888 x156
203-426-3156 Fax
cdoyle@us.tuv.com
www.us.tuv.com

# EXHIBIT J

RE: Please help again with letter for College
Hilde Holland
to:
Thomas Rettig
12/01/2011 07:20 PM
Show Details

Dear Mr. Rettig,

Please contact Nancy Culliney in connection with this inquiry.

Kind regards,

HILDE HOLLAND | WUERSCH & GERING LLP
100 Wall Street, 21st Fl. | New York, New York 10005
212-509-4715 (direct) | 212-509-5050 (firm) | 212-509-9559 (fax)
hilde.holland@wg-law.com | www.wg-law.com

This message and any attachments hereto contain confidential information and information which may be subject to the attorney-client privilege. It is intended for the individual or entity named above. If you are not the intended recipient, please do not read, copy, use or disclose this communication to others; also please notify the sender by replying to this message, and then delete it from your system. Thank you.

Any advice in this email concerning a federal tax issue is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding any tax penalties that can be imposed by the Internal Revenue Service, or for promoting, marketing or recommending any tax-related matters addressed herein.

From: Thomas Rettig [mailto:TRettig@us.tuv.com]
Sent: Thursday, December 01, 2011 10:18 AM
To: Hilde Holland
Subject: Fw: Please help again with letter for College

Hello Frau Holland,

I am aware you are probably still busy with the H1B work. But I was hoping you could help me with this letter here some time soon. If I miss out on the college deadline for submittal of the letter it's going to cost me a lot. Greatly appreciate it. Thanks!
Best Regards,
Thomas Rettig


TUV Rheinland Rail Sciences, Inc.
411 N Clarendon Ave
Scottdale, GA 30079-0885

Thomas Rettig
Vice President Business Development
Tel    +1 (404) 294-5300
Cell   +1 (203) 278-4775
Fax   +1 (404) 294-5423
Email  trettig@us.tuv.com
http://www.tuv.com

In the event that this email contains any proposal, or the acceptance of any proposal, by TUV Rheinland Rail Sciences, Inc. to provide any testing, consulting, or other professional services, please be advised that such proposal or acceptance is made subject to the TUV Rheinland Rail Sciences, Inc. General Terms and Conditions which are incorporated herein as though fully set forth in this email. You are hereby agreeing to accept each and every one of the TUV Rheinland Rail Sciences, Inc. General Terms and Conditions. To obtain a copy of the General Terms and Conditions, please contact the sender immediately via email, or call the office at 404.294.5300, or visit our website, www.tuv.com.
---- Forwarded by Thomas Rettig/US/TUV on 12/01/2011 10:13 AM ----

From:    Thomas Rettig/US/TUV

To:       Hilde Holland <hholland@wg-law.com>
Date:     11/21/2011 08:52 AM
Subject:  Please help again with letter for College

Good Morning Frau Holland,

A while ago you helped out with a letter confirming to my step daughter's college that we are actively taking steps toward obtaining permanent residency (I have the letter attached here again for your reference). The college is now asking for an updated attorney letter before confirming Olivia's tuition for the next semester again. Would you please be so kind and help us out again? Greatly appreciate it.

Apart from the letter is there also an update available for me on where we stand with the PERM application process?

Thanks a lot!
Best Regards,
Thomas


TUV Rheinland Rail Sciences, Inc.
411 N Clarendon Ave
Scottdale, GA 30079-0885

Thomas Rettig
Vice President Business Development
Tel      +1 (404) 294-5300
Cell     +1 (203) 278-4775
Fax      +1 (404) 294-5423
Email    trettig@us.tuv.com
http://www.tuv.com

·In the event that this email contains any proposal, or the acceptance of any proposal, by TUV Rheinland Rail Sciences, Inc. to provide any testing, consulting, or other professional services, please be advised that such proposal or acceptance is made subject to the TUV Rheinland Rail Sciences, Inc. General Terms and Conditions which are incorporated herein as though fully set forth in this email. You are hereby agreeing to accept each and every one of the TUV Rheinland Rail Sciences, Inc. General Terms and Conditions. To obtain a copy of the General Terms and Conditions, please contact the sender immediately via email, or call the office at 404.294.5300, or visit our website, www.tuv.com.

Please be advised that TEST RESULTS, TEST REPORTS, CERTIFICATIONS, TEST MARKS and any other STATEMENTS regarding a work order are as a matter of principle not issued via e-mail! Any communications via e-mail regarding such matters are for informational purposes only, shall not be relied on, and do not replace or anticipate the formal notification regarding certification, test marks, test results or other decisions in accordance with our Testing and Certification Regulations.

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| Thomas Rettig, Kerstin Rettig and Olivia Angelina Eckhardt, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. _____ |
| TUV Rheinland Rail Sciences, Inc., TUV Rheinland North America Holding, Inc., and TUV Rheinland of North America, Inc., | ) ) ) ) ) | |
| Defendant. | ) ) | |

## NOTICE OF CONSENT OF REMOVAL

Defendant TUV Rheinland Rail Sciences, Inc., hereby provides notice

of its consent to removal to this Court of the case styled *Thomas Rettig, et al v.*

*TUV Rheinland Rail Services, Inc., et al,* Civil Action No. 12-cv-2653-10.


Respectfully submitted this _____ of February, 2012.


Dated: _2/24/2012_____        Signed: _____

By: _SEBASTIAN   OERTEL___

Title: _CHIEF OPERATING OFFICER_

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Thomas Rettig, Kerstin Rettig and )
Olivia Angelina Eckhardt, )
)
          Plaintiffs, )
)
)
v. )     Civil Action No. _____
)
TUV Rheinland Rail Sciences, Inc., )
TUV Rheinland North America )
Holding, Inc., and TUV Rheinland of )
North America, Inc., )
)
          Defendant. )

## NOTICE OF CONSENT OF REMOVAL

Defendant TUV Rheinland North America Holding, Inc., hereby

provides notice of its consent to removal to this Court of the case styled *Thomas*

*Rettig, et al v. TUV Rheinland Rail Sciences, Inc.*, et al, Civil Action No. 12-cv-

2653-10.

Respectfully submitted this _24_ of February, 2012.

Dated: _2/24/2012_     By: _____

                          Gerhard Lübken

                      Title: _President & CEO_

# EXHIBIT C

IN THE SUPERIOR COURT OF DEKALB COUNTY
STATE OF GEORGIA

| | |
|---|---|
| Thomas Rettig, Kerstin Rettig and<br>Olivia Angelina Eckhardt,<br><br>Plaintiffs,<br><br>v.<br><br>TUV Rheinland Rail Sciences, Inc.;<br>TUV Rheinland North America<br>Holding, Inc.; and TUV Rheinland of<br>North America, Inc.;<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action File No. 12CV2653-10<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## NOTICE OF FILING NOTICE OF REMOVAL

Defendant TUV Rheinland of North America, Inc. ("TUV Rheinland"), by its

undersigned counsel, hereby gives notice that it has filed a Notice of Removal in the United

States District Court for the Northern District of Georgia, Atlanta Division, in the case styled

*Thomas Rettig, et al v. TUV Rheinland Rail Sciences, Inc., et al*, Civil Action File No.

12CV2653-10. A copy of the Notice of Removal is attached as Exhibit "A."

Respectfully submitted this 27th day of February, 2012.

Gregory L. Smith, Jr.
Georgia Bar No. 658369
Brandon M. Cordell
Georgia Bar No. 142030
JACKSON LEWIS LLP
1155 Peachtree Street, NE, Suite 1000
Atlanta, Georgia 30309
Telephone:    (404) 525-8200
Facsimile:     (404) 525-1173
smithg@jacksonlewis.com
cordellb@jacksonlewis.com

COUNSEL FOR TUV RHEINLAND OF NORTH
AMERICA, INC.

IN THE SUPERIOR COURT OF DEKALB COUNTY
STATE OF GEORGIA

Thomas Rettig, Kerstin Rettig and       )
Olivia Angelina Eckhardt,               )
                                        )
            Plaintiffs,                 )
                                        )
                                        )
v.                                      )   Civil Action File No. 12CV2653-10
                                        )
                                        )
TUV Rheinland Rail Sciences, Inc.;      )
TUV Rheinland North America             )
Holding, Inc.; and TUV Rheinland of     )
North America, Inc.;                    )
                                        )
            Defendants.                 )

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **NOTICE OF FILING**

**NOTICE OF REMOVAL** via hand delivery to:

> Fred Green, Esq.
> Judy Farrington Aust, Esq.
> Goodman McGuffey Lindsey & Johnson, LLP
> 3340 Peachtree Road NE
> Suite 2100
> Atlanta, Georgia 30326-1084

This 27th day of February, 2012.

Brandon M. Cordell
Georgia Bar No. 142030