```
                  UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF GEORGIA
                         ATLANTA DIVISION
```

| | |
|---|---|
| THOMAS RETTIG, KERSTIN RETTIG, and OLIVIA ANGELINA ECKHARDT, | |
| Plaintiffs, | CIVIL ACTION |
| v. | NO. 1:12-CV-0608-CAP |
| TUV RHEINLAND RAIL SCIENCES, INC., TUV RHEINLAND NORTH AMERICA HOLDING, INC., and TUV RHEINLAND OF NORTH AMERICA, INC., | |
| Defendants. | |

**O R D E R**

This case involves a German citizen, Thomas Rettig, who alleges his employer promised to sponsor him and his family through the process to obtain a Green Card. The employer, TUV Rheinland Rail Sciences, Inc. (TUV/RSI), instead chose to eliminate Mr. Rettig's position before the process completed. This matter is before the court on the plaintiffs' motion for a preliminary injunction [Doc. No. 1, at 71] to prevent TUV/RSI from doing so, and their motion for leave to file excess pages in their reply brief [Doc. No. 8]. As an initial matter, the court GRANTS the motion for leave to file excess pages. However, the court denies the motion for preliminary injunction.

**I.   Factual Background**

Thomas Rettig and his family are German citizens living in the U.S. under an E-2 work visa. The Rettig family moved to the United

States in 2006, when Mr. Rettig accepted a job with a U.S. subsidiary of TUV Rheinland Group. In July 2010, TUV acquired a Georgia company, Rail Sciences, Inc., and changed its name to TUV Rheinland Rail Sciences, Inc. In preparing for this acquisition, TUV approached Rettig about transferring to Georgia to take a position as Vice President of Business Development at TUV/RSI.

Rettig's main allegation is that he negotiated with TUV and/or TUV/RSI to get it to sponsor his family for green cards to allow them to remain in the United States permanently. At the hearing, Mr. Rettig testified that these negotiations included the then President and CEO of TUV Rheinland of North America, Inc., Stephan Schmitt, and Deep Krishnan, a Senior Vice President of the same company. In July 2010, the HR Manager for TUV, Cindy Doyle, emailed Rettig and said, "your request for the Green Card status was also approved." Pls.' Ex. D [Doc. No. 5-4]. In a subsequent letter, Ms. Doyle again confirmed the process of Rettig's transfer to the TUV/RSI company, staying that it was "in the process of creating your contract of employment," and noting TUV/RSI would "start the process of attaining a Green Card for you and your family." Pls.' Ex. B [Doc. No. 5-3]. On March 29, 2011, Rettig received an "Offer of Employment" letter, that (1) stated, "As part of this transfer, it was agreed that the company would sponsor you and your family through the Green Card process," and (2) instructed Rettig to read

the included Employee Handbook and sign the Handbook Receipt Acknowledgment Form. Pls.' Ex. A [Doc. No. 5-1].

The Acknowledgment Form is important because it contains a provision that Rettig's employment was "at will" and such at-will status is "the sole and entire agreement" between Rettig and TUV/RSI, and it "supersedes all prior agreements, understandings, and representations" concerning his employment. Defs.' Ex. 2 to Culliney Decl. [Doc. No. 3-1, at 9]. However, both this document and the Personnel Policy Handbook Disclaimer, which Rettig was acknowledging, identify the President of TUV/RSI as a person who had authority to enter into an agreement for other than at-will status. Id.; Ex. 1 to Culliney Decl. [Doc. No. 3-1, at 7].

Mr. Rettig signed both the Offer of Employment and the Handbook Receipt Acknowledgment Form containing the disclaimers on April 23, 2011. By this time, he had already moved to Georgia with his family to begin working for TUV/RSI. TUV/RSI retained an immigration attorney (who jointly represented Rettig) to begin the Green Card process.

In October 2011, TUV/RSI decided to eliminate Mr. Rettig's position and instructed the immigration attorney, Hilde Holland, to take no further action on the Green Card. Rettig was not notified of this decision. In November, he contacted Ms. Holland to check the status but received no response. TUV/RSI ultimately scheduled

a meeting with Rettig for January 6, 2012. The meeting was attended by Rettig, the Chief Operating Officer of TUV/RSI, Sebastian Oertel, and the HR Director for TUV North America Holding, Inc., Nancy Culliney. At the meeting, Oertel informed Rettig his position was being terminated and gave him a "general release" and separation agreement to sign. Exs. G, H to Compl. [Doc. No. 1, at 53-64].

Rettig declined to sign the separation agreement and filed this action in the Superior Court of DeKalb County, Georgia, on February 15, 2012, including a motion for a temporary restraining order (TRO) and interlocutory injunction. The plaintiffs' claims are for: (1) breach of employment agreement, (2) breach of contract, (3) constructive fraud, (4) promissory estoppel, and (5) fraud, as well as litigation costs and punitive damages. In the prayer for relief, the complaint specifically asks for an injunction to maintain the status quo, specific performance of the promise to employ Rettig at TUV/RSI "through the Green Card process," and compensatory and punitive damages. Compl. 19-20 [Doc. No. 1, at 28-29].

The state court granted the TRO without notice to the defendants to "prohibit[] TUV from terminating the employment of Thomas Rettig." [Doc. No. 1, at 69]. The defendants removed to this court. The court then extended the TRO until, at most, Wednesday,

March 14. On Tuesday March 13 this court held a hearing on the motion for preliminary injunction.

## II. Legal Analysis

The Rettigs move this court for a preliminary injunction preventing TUV/RSI from terminating him from his current position until the conclusion of this action. To obtain such relief, the plaintiff must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). A preliminary injunction is "an extraordinary and drastic remedy" that should not be granted unless the plaintiffs clearly carry the burden of persuasion on each of the elements. Cunningham v. Adams, 808 F.2d 815, 819 (11th Cir. 1987).

### A.  Likelihood of Success on the Merits

The first factor that the court must consider is whether the plaintiffs demonstrated a substantial likelihood of success on the merits. Winter, 555 U.S. at 20; see also Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 16 (1st Cir. 1996) ("Likelihood of success is the main bearing wall of the four-factor framework."). The basis of Rettig's claims is that there was an enforceable promise to sponsor him and his family "through the

Green Card process." Whether that promise is enforced as an employment agreement, general contract, or promissory estoppel, the root of his claim is the same: the negotiations that resulted in the Offer of Employment with the promise contained therein.

### 1. Is the Promise Enforceable?

In Georgia, employment is considered "at will" unless there is a contract for a definite term. O.C.G.A. § 34-7-1 (2008). If the employment is at will, the employee can be terminated for any reason or no reason at all; no relief can be awarded for termination. Rettig argues that the "through the Green Card process" language in his offer letter amounts to a contract for a "definite term."

"Under some circumstances, a jury issue on whether a contract is terminable at will may be created by evidence that the parties agreed to continue an employment relationship through completion of a particular project." James W. Wimberly, Jr., Georgia Employment Law § 1:6 (4th ed. 2008) (citing Pickle Logging, Inc. v. Ga. Pac. Corp., 623 S.E.2d 227 (Ga. Ct. App. 2005)). At the hearing on the motion, Retting and Charles Kuck, an expert in immigration law and procedures, testified that the process for obtaining a green card was finite and could be completed for an employee of Rettig's qualifications in one to two years.

In Pickle Logging, the plaintiff argued there was an employment contract for a definite term based on a promise to harvest hardwood trees on a particular tract of land; once the harvest was complete, the term of the contract would be over. However, the court held summary judgment for the defendant was proper because the evidence established the plaintiff's work "would continue 'at least until the work was through.' The record thus show[ed] that the alleged oral agreement was indefinite as to duration, terminable at will, and unenforceable." Pickle Logging, 623 S.E.2d at 230.

In some cases, there may be a contract for a minimum, definite term where, after the minimum has elapsed, the future period comes under the employment at- will. Schuck v. Blue Cross & Blue Shield of Ga., Inc., 534 S.E.2d 533, 534 (Ga. Ct. App. 2000). Further, there are "rare cases" where construction of a contract may be a question for the jury, rather than for the court. Lineberger v. Williams, 393 S.E.2d 23, 25 (Ga. Ct. App. 1990) (holding that interpretation of a restoration services contract with no explicit duration term was a jury question where the provisions "could be construed to mean that [contractor] was obligated to complete the project . . . [or] may only denote the details of [his] responsibilities, and the specifics of his compensation should he choose to remain on the job until it was completed").

On the other hand, TUV/RSI argues that the Green Card term does not establish the contract was for a definite term. It points to cases where Georgia courts have held promises to employ a person until the employer became insolvent, Barker v. CTC Sales Corp., 406 S.E.2d 88, 90 (Ga. Ct. App. 1991), or until retirement, Ga. Power Co. v. Busbin, 250 S.E.2d 442, 444 (Ga. 1978), were too indefinite to overcome the at-will presumption. For example, in Barker, the court explained that the insolvency term was too indefinite because the employer "might not become insolvent for many years to come or might be insolvent tomorrow." 406 S.E.2d at 90. Additionally, TUV argues that the Personnel Policy Handbook Disclaimer and the Handbook Acknowledgment Form that Rettig signed both specify at-will employment. So, even if "through the Green Card process" is a definite term, it is rendered ineffective by the express provisions of at-will employment in those documents.

Having carefully reviewed the record and relevant Georgia law, the court concludes that the promise to employ Rettig "through the Green Card process" in the Offer Letter may be a term of sufficiently limited duration to create an enforceable employment contract. The testimony at the hearing on the motion showed that, had TUV/RSI been diligent in pursuing the Green Card matter, the process would have taken approximately one to two years. Importantly, it would have a definite end--either the grant or

denial of Green Cards for the Rettig family. Cf. Barker, 406 S.E.2d at 90 (concluding "insolvency" was indefinite because it may not happen for many years or tomorrow); Busbin, 250 S.E.2d at 444 (concluding term "until retirement" was indefinite). Similar to a construction contract, the process may proceed quickly or may be hampered by unexpected delays, but its end will come within a reasonably definite time. See Lineberger, 393 S.E.2d at 25.

Further, the court also concludes the disclaimers put forward by TUV do not defeat the definite term contract formed by the Offer Letter. The intent of the parties is foremost in the construction of contracts. O.C.G.A. § 13-2-3 (2010). The evidence considered shows that Rettig specifically negotiated for the Green Card sponsorship for his family because of concerns about the ability for his step-daughter, plaintiff Olivia Angelina Eckhard, to apply to universities in either the United States or Germany. Sponsorship was part of the bargained-for benefit to Rettig.[1] The President and CEO of TUV Rheinland of North America, Inc., participated in these negotiations and approved of the Green Card sponsorship, and TUV's exhibits indicate he had authority to make agreements "other than" or "to the contrary" of at-will employment [Doc. No. 3-1, at 9, 7].

---

[1] This is in contrast to the defendants' contention that the promise was merely a "derivative benefit" of Rettig's employment. The court finds otherwise on the record before it.

Finally, the Handbook Disclaimer's statement that it did not create an employment "contract, term, or obligation," and the Acknowledgment Form's specification of at-will employment as "the sole and entire agreement," which "supersedes all prior agreements, understandings, and representations concerning [Rettig's] employment" are in conflict with the contemporaneously executed acceptance of the Offer Letter, which contained the promise to employ him "through the Green Card process." This creates an amgiguity which must be resolved by rules of construction. Westminster Group, Inc. v. Perimeter 400 Partners, 460 S.E.2d 827, 829 (Ga. Ct. App. 1995). One such rule is that "provisions which are specially inserted by a party take precedence over the printed provision of a form contract." Benedict v. Snead, 519 S.E.2d 905, 907 (Ga. 1999). Thus, the specially negotiated, specially inserted term in the Offer Letter would take precedence over the boilerplate Acknowledgment Form.[2]

---

[2] If the promise is not for a definite term and the employment is at will, the plaintiffs' other bases for relief are unconvincing. The plaintiffs concede a promise of employment for an indefinite term cannot be enforced by promissory estoppel. See [Doc. No. 5, at 15-16] (citing Thompson v. Floyd, 713 S.E.2d 883, 890-91 (Ga. Ct. App. 2011)). Nonetheless, they argue "a promise that defines the term in reference to a specific task is enforceable." Id. Thus, the inquiry into definiteness essentially duplicates that of the determination of at-will status.

### B.   Is Specific Performance or an Injunction Available as a Remedy?

Even though the promise is likely enforceable, it is highly doubtful that, under Georgia law, this court could order either (1) an injunction to prevent the breach of Rettig's employment contract or (2) specific performance of the contract, as he ultimately seeks in the complaint. Instead, the enforcement of this kind of breach would be limited to monetary remedies. Counsel for the plaintiffs candidly admitted the rule is, "**Generally** an injunction will not issue to restrain the breach of a contract for personal services unless the services are of a peculiar merit or character and cannot be performed by others," O.C.G.A. § 9-5-7 (2007) (emphasis added), and neither he nor the court can locate persuasive authority granting this remedy against the general rule.

Instead, Georgia courts have characterized the statute's requirement of services of particular merit or character as a "narrow range" of services granted in only highly peculiar circumstances. Ashworth v. Cunningham/MSE, 315 S.E.2d 419, 420 (Ga. 1984); cf. Bussell v. Bishop, 110 S.E. 174, 176 (Ga. 1921) (finding "peculiar facts" warranted enjoining employer landlord "though solvent, from attempting by mob violence to intimidate his cropper [employee] in order to compel him to breach his contract and to abandon his crop after the crop is practically matured").

"[O]therwise the remedy at law would be adequate. But where the services involve the exercise of powers of the mind, as of writers or performers, which are peculiarly and largely intellectual, they may form the class in which the court would interfere upon the ground that they are individual and peculiar." Ashworth, 315 S.E.2d at 420 (quoting Hammond v. Georgian Co., 65 S.E. 124, 124 (Ga. 1909)) (rejecting specific performance as remedy for breach of contract for architectural services). There is no evidence that Rettig's duties as a vice president of TUV/RSI fall within this narrow range of services.

Further, the ultimate, preferred remedy the plaintiffs seek, specific performance, is generally not available in a case where an employee claims a breach of an employment contract. If an employer wrongfully terminates an employee, "[t]he employee's only recourse . . . is the recovery of damages; he has no right to recover the position and title of his employment." Rodgers v. Ga. Tech Athletic Ass'n, 303 S.E.2d 467, 470 (Ga. Ct. App. 1983); see also John K. Larkins, Jr., Georgia Contracts: Law and Litigation § 12:9 (2d ed. 2011) ("As a general rule, the remedy of a decree for specific performance relates only to real estate. . . . Specific performance is generally not available in a case where an employee claims a breach of an employment contract." (citing Gabrell v. Byers, 172 S.E. 227, 228 (Ga. 1933); Rodgers, 303 S.E.2d at 470)). But see

Quadron Software Int'l Corp. v. Plotseneder, 568 S.E.2d 178, 183 (Ga. Ct. App. 2002) (holding specific performance was inappropriate because irreparable harm had not been demonstrated, not because specific performance was not an available remedy).

The court notes that in other contexts, reinstatement--arguably a form of "specific performance" of an employment contract--may be available.

> Although most remedial labor statutes specifically authorize courts to order reinstatement of employees fired in violation of the statute, reinstatement is not normally ordered in common law cases. Historically, the rationale derives from the rule in equity that personal service contracts may not be specifically enforced. This rule was based on the doctrine of mutuality; an employee cannot be ordered to work for an employer, and therefore an employer should not be ordered to employ someone against its wishes. As a practical matter, reinstatement carries with it the potential for unhappiness and retaliation down the line. For all of these reasons, few employees seek reinstatement in common law actions.

2 Mark A. Rothstein et al., Employment Law § 9.23 (4th ed. 2009) (footnotes omitted).[3] This action is for a simple breach of an employment contract (and related contractual theories), the remedy of which under Georgia law is damages: "The only two ways that an employee may sue his employer for discharge (absent, of course,

---

[3] See also, generally, Martha S. West, The Case Against Reinstatement in Wrongful Discharge, 1988 U. Ill. L. Rev. 1, 10-12, 51-56 (describing the history of the "no specific performance" rule and noting that, "[a]bsent legislative reform, reinstatement, an equitable remedy, will remain generally unavailable," even in some cases where legal damages were **not** available).

some claim of unlawful discrimination) are to sue for breach of contract or to bring an action in equity for the reasonable value of the services provided (quantum meruit)." Wimberly, supra, § 1:10 (citing cases).

Thus, the court concludes that under Georgia law, Rettig cannot ultimately prevail in his request for specific performance of the contract under Georgia law. Cf. Pierce v. Rush, 82 S.E.2d 649, 650 (Ga. 1954) (applying the doctrine of mutuality in the context of a sale of land and stating that the remedy of specific performance, "if it exists at all, must be mutual and reciprocal"). If he cannot win specific performance of his personal services contract upon the conclusion of this action, then it would be inappropriate to order an injunction to effectively give him the same remedy now. Accordingly, the plaintiffs have not demonstrated a likelihood of success on the merits.

**B.   Other Factors and Conclusion**

The court need not analyze the remaining factors because the plaintiffs cannot show they are likely to succeed on the merits to obtain the equitable relief they seek. Norfolk S. Ry. Co. v. Ala. Dep't of Revenue, 550 F.3d 1306, 1312 n.10 (11th Cir. 2008) (affirming denial of preliminary injunction without addressing remaining factors), abrogated on other grounds by CSX Transp., Inc. v. Ala. Dep't of Revenue, 131 S. Ct. 1101 (2011). Accordingly, the

plaintiffs' motion for a preliminary injunction [Doc. No. 1] is DENIED.

**III. Conclusion**

For the above reasons, the plaintiff's motion for a preliminary injunction [Doc. No. 1] is DENIED. The motion for leave to file excess pages [Doc. No. 8] is GRANTED. The TRO granted in the court's order of February 29, 2012 [Doc. No. 2] is hereby DISSOLVED. This case shall proceed as claiming monetary relief alone, and the plaintiffs are DIRECTED to respond to the defendants' motion to dismiss [Doc. No. 4] on or before Friday, March 30, 2012.

SO ORDERED, this 14th day of March, 2012.

/s/ Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge